### STATE vs. EDWARD BROWN.

*Criminal Law—Murder— Manslaughter—Malice— Self-Defense.*

1. Murder of the first degree and of second degree, manslaughter, and malice express and implied, defined.

2. All homicides with a deadly weapon are presumed to be malicious until the contrary appears from the evidence, and the burden of proof to the contrary lies on the accused.

3. In order to constitute the crime of murder of the second degree, it is not essential that the slayer intended to kill his victim at the time he struck the fatal blow. If death ensues from an unlawful cruel act of violence on the part of the slayer, in the absence of adequate or sufficient provocation, the law implies that such act was done maliciously, and the crime is murder of the second degree.

4. In order to reduce the crime to manslaughter the provocation must be very great; so great as to produce such a transport of passion as to render the person, for the time being, deaf to the voice of reason. While murder proceeds from a wicked and depraved spirit and is characterized by malice, manslaughter results not from malice but from unpremeditated passion.

5. In determining whether the accused was acting in self-defense when he struck the fatal blow, the jury should consider whether he was in danger of injury at the time, and if so, whether he took the proper precautions to avoid such danger.

And in this connection due weight should be given to the relative size and physical power of the accused and the deceased.

6. It is not sufficient that the accused believed, at the time he struck the fatal blow, that he was in danger of death or great bodily harm at the hands of the deceased, but the circumstances must have been such as to justify a reasonable man in such belief, and further that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

7. In ascertaining whether the accused should have retreated from his assailant, the jury should give due weight to the evidence touching the physical condition of the accused at that time, as well as to the evidence as to his actual movements shortly before and at the time of the killing.

(*May 4, 1905.*)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings*, Deputy-Attorney General, for the State.

*Henry Ridgely* and *Samuel M. Harrington* for defendant.

At a Court of Oyer and Terminer held in Kent County beginning May 4, 1905, the prisoner, a colored man, was tried upon an indictment charging MURDER OF THE FIRST DEGREE of one James Lethrem, a white man, on the 11th day of June, 1904, in Clayton in said county.

After the evidence was concluded, the Attorney-General stated that he would not press for a conviction of murder of the first degree, but contended that under the evidence the prisoner was guilty of murder of the second degree.

SPRUANCE, J., charging the jury:

Gentlemen of the jury:—The prisoner, Edward Brown, is indicted for the murder of James Lethrem on the eleventh day of June last in the town of Clayton, in Duck Creek Hundred, in this county. The uncontradicted evidence is that the death of Lethrem was caused by a stroke or blow upon his head, inflicted by the

handle of a pitch-fork in the hands of the prisoner.

On behalf of the prisoner it is contended, (1) that the death of Lethrem was the result of an accident without the fault of the prisoner; (2) that the fatal blow was inflicted by the prisoner in justifiable self-defense against an attack or threatened attack by the deceased; (3) that if the prisoner is guilty of any offense whatever the crime cannot exceed manslaughter.

By the law of this State felonious homicide is of three kinds; murder of the first degree, murder of the second degree and manslaughter. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. As here used, the term malice is not restricted to spite or hatred towards the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart regardless of social duty and fatally bent on mischief. Wherever the killing is done deliberately or without adequate cause, the law presumes that it was done with malice and the burden is on the prisoner to show from the evidence or by inference from the circumstances of the case that the act was not done with malice.

Murder of the first degree is where the killing was done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death. Express malice aforethought is where the killing is done with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways; as for instance by lying in wait, prior menaces or threats, former grudges, ill-will or hatred toward the deceased, or any other circumstances which disclose the purpose or intention of the accused toward his victim.

It is not necessary for us to say more in reference to the crime of murder of the first degree, as the Attorney-General has very properly stated that the evidence in this case does not disclose such deliberate mind and formed design on the part of the accused to murder the deceased, as would warrant the jury in finding him guilty of murder of the first degree.

Murder in the second degree is where the killing was done with implied malice. Implied malice is an inference or conclusion of the law from the facts found by the jury. Murder in the second degree is where there was no deliberate mind or formed design to take life or to perpetrate a crime punishable with death, but where the killing was done without justification or excuse and without provocation, or without sufficient provocation to reduce the offense to manslaughter.

All homicides with a deadly weapon, that is, with a weapon likely to produce death, are presumed to be malicious until the contrary appears from the evidence, and the burden of proof to the contrary lies on the accused, as the natural and probable consequences of the use of a deadly weapon are presumed by the law to have been intended by the person so using it.

In order to constitute the crime of murder of the second degree, it is not essential that the slayer intended to kill his victim at the time he struck the fatal blow.

If death ensues from an unlawful cruel act of violence on the part of the slayer, in the absence of adequate or sufficient provocation, the law implies that such act was done maliciously, and the crime is murder of the second degree.

Manslaughter is where one person unlawfully kills another without malice. In order to reduce the crime to manslaughter the provocation must be very great; so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved spirit and is characterized by malice, manslaughter results not from malice but from unpremeditated and unreflecting passion.

No looks or gestures, however insulting; no words, however opprobrious or offensive, can amount to a provocation sufficient to justify even a slight assault. Nor can a slight assault excuse the killing of the assailant with a deadly weapon so as to reduce the offense from the grade of murder to that of manslaughter. The more usual instances of manslaughter occur where two persons are

engaged in mutual combat and one slays the other in the heat of passion.

The burden of establishing self-defense to the satisfaction of the jury rests with the accused.

In repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary for that purpose he becomes the aggressor.

If the deceased first attacked the accused, even though the attack was of such a character as to create in the mind of the accused a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant.

No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm.

If one is attacked and from the character of such attack he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased would be a justifiable act of self-defense.

If, on the other hand, the attack was of a trifling character and manifested no purpose or intention on the part of the assailant to inflict any serious injury, the repelling of such an attack by the use of a weapon likely to produce death, would not be an act of justifiable self-defense.

In ascertaining whether the accused was in any and in what danger of injury at the hands of the deceased when he struck the mortal blow, and, if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses. And in this connection, due weight should be given to the relative size and physical power of the accused and the deceased. If the

jury are satisfied that the deceased made the first assault, they should consider the character of such assault. Was it merely a technical or trivial assault, or was it an angry or violent assault which indicated a purpose to take the life of the accused, or to do him some serious bodily harm.

In order to justify or excuse the accused in striking the fatal blow it is not sufficient that he at the time believed himself to be in danger of death or great bodily harm at the hands of the deceased, but the circumstances must have been such as to justify a reasonable man in such belief, and further that there was no reasonable way of avoiding or escaping from such danger except by slaying the assailant.

In ascertaining whether the accused should have retreated from his assailant, the jury should give due weight to the evidence touching the physical condition of the accused at that time, as well as to the evidence as to his actual movements shortly before and at the time of the killing.

In every criminal case the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. The accused should not be convicted of any crime unless every material ingredient of the crime shall be proved to the satisfaction of the jury beyond a reasonable doubt.

If after carefully and conscientiously considering and weighing all the evidence in the case, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such a doubt and your verdict should be not guilty. But such a doubt must not be a mere fanciful, vague or speculative doubt, but a reasonable substantial doubt remaining in your minds after a careful consideration of all of the evidence, and such a doubt as reasonable, fair-minded and conscientious men would entertain under all the facts and circumstances of the case.

Under this indictment, if the evidence shall so warrant you, you may find the prisoner guilty of murder of the second degree, or guilty of manslaughter or not guilty.

Verdict, guilty of manslaughter.