**Keith A. JENKINS, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

March 2, 1973.

Henry A. Wise, Jr., Asst. Public Defender, Wilmington, for defendant below, appellant.

Richard R. Wier, Jr., State Prosecutor, and James A. Erisman, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before CAREY and HERRMANN, JJ., and SHORT, Vice Chancellor.

HERRMANN, Justice:

The defendant, Keith A. Jenkins, appeals his conviction of second degree murder on various grounds.

### I.

The defendant, Kevin Hall, and David Pritchett were engaged in target practice with a .22 calibre rifle in a vacant field. Their targets were poles adjacent to the Penn Central Railroad tracks. As the trio was leaving the field, a locomotive moved slowly down the tracks. According to the conflicting testimony, either the defendant or Kevin Hall fired into the cab of the locomotive. The bullet struck the conductor in the eye; he died as the result.

Immediately after the shooting, the trio went to the nearby house of Mr. and Mrs. Hargrow. The defendant carried the rifle into the Hargrow house and left it there. The trio then dispersed but later congregated at the home of Lillian Wilkes, where Hall allegedly made inculpatory statements concerning the shooting.

Hall was granted immunity to testify at the trial as a State's witness. He testified that the defendant fired the fatal shot. His testimony placed the defendant to the south of Pritchett and himself.

The defendant testified that Hall fired the fatal shot. His testimony tended to confirm Hall's testimony as to the relative positions of the members of the trio at the time of the shooting.

The third member of the trio, Pritchett, was not implicated in the shooting by anyone. He, too, testified that Hall fired the fatal shot. His testimony confirmed Hall's testimony as to the relative position of the three at the time of the shooting. There was expert testimony that the fatal shot could only have come from the defendant's location.

Mrs. Hargrow had asserted in a written statement that she was in the kitchen of her house at the time of the shooting and did not see it. At the trial, her husband testified that she was in a position to see the shooting. Apparently following this lead, the defense called Mrs. Hargrow, who testified that she saw the shooting and that "a tall boy", not the defendant, fired the shot.

Lillian Wilkes had given a written statement to the police prior to the trial. At the trial she testified that Hall admitted shooting "a dude". In rebuttal, the State produced police testimony as to her prior inconsistent statement. However, her prior written statement was not produced.

## II.

The defendant contends that the grant of immunity to the State's witness, Hall, constitutes reversible error.

Defendant presents two arguments in this connection: (1) he argues that the grant of immunity was improper because Hall was neither a co-defendant nor a co-conspirator; and (2) he argues that the grant of immunity, in effect, constituted either a directed verdict for the State or an impermissible comment on the evidence by the Trial Judge. Neither of these arguments warrants a reversal of the conviction.

■ It is noted at the outset that the defendant did not object at the trial to the grant of immunity; nor did he object to Hall's testimony on that ground. It is elementary that this Court will decline generally to review contentions not raised below and not fairly presented to the court below for decision. Rule 5(7), Del.C.Ann. Nonetheless, it is incumbent upon us to consider the contentions here raised insofar as the grant of immunity may have constituted plain error. Kominski v. State, Del.Supr., 2 Storey 194, 154 A.2d 691 (1959).

### A.

■ Turning to the defendant's contention that the grant of immunity to Hall was improper because he was neither co-defendant nor co-conspirator, we doubt the defendant's standing to challenge the propriety of granting immunity to another. Cf., New York ex rel. Hatch v. Reardon, 204 U.S. 152, 27 S.Ct. 188, 51 L.Ed. 415 (1907); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Assuming such standing, however, we are of the opinion that the grant of immunity to Hall was not improper on the ground here asserted.

The defendant cites numerous cases in support of his argument that immunity can be granted only to a co-defendant or a co-conspirator: Headly v. Baron, Fla.Sup., 228 So.2d 281 (1969); State v. Schell, Fla.App., 222 So.2d 757 (1969); People v. Williams, 11 Cal.App.3d 1156, 90 Cal.Rptr. 409 (1970); People v. Boehm, 270 Cal. App.2d 13, 75 Cal.Rptr. 590 (1969); People v. Green, 102 Cal.App.2d 831, 228 P.2d 867 (1951); Bruno v. State, 192 Tenn. 244, 240 S.W.2d 528, cert. denied 342 U.S. 840, 72 S.Ct. 68, 96 L.Ed. 635 (1951); Odiorne v. State, 249 Ala. 375, 31 So.2d 132 (1947). We find none of these cases persuasive for the following reasons:

■ There is nothing in the Delaware Immunity Statute (11 Del.C. § 3508) which restricts the grant of immunity to a co-defendant or a co-conspirator. Nor does any of the cases cited by defendant restrict immunity to co-defendants or co-conspirators. The common thread running through the cases is that immunity is *usually* granted to co-defendants or co-conspirators. This does not create the rule of limitation the defendant here urges.

The defendant also argues that a grant of immunity is valid only if it is co-extensive with the scope of the privilege against self-incrimination, citing Murphy v. Waterfront Commission, 378 U.S. 52, 84

S.Ct. 1594, 12 L.Ed.2d 678 (1964). The thrust of this argument is that since it has not been shown that Hall could incriminate himself, and thus was not entitled to invoke the Fifth Amendment, the grant of immunity was improper.

■ Defendant misapprehends the nature of the rule in *Murphy*. It was there held that a State may use testimony of an immunized witness against that witness in a later proceeding if the portion of the testimony used was not incriminating when it was given. See United States v. Smith, 3 Cir., 206 F.2d 905, 907–908 (1953). Nothing in *Murphy* requires that a witness' testimony be incriminating before immunity is given.

It is concluded, therefore, that the grant of immunity to Kevin Hall was not improper because he was neither a co-defendant nor a co-conspirator.

### B.

■ The defendant's second argument is likewise fruitless: that the grant of immunity, in effect, constituted either a directed verdict or an impermissible comment on the evidence by the Trial Judge.

This argument is premised on the evidence that either Hall or the defendant fired the fatal shot. Defendant contends that by granting immunity to Hall, the Trial Judge impelled the jury to find the defendant guilty. This argument assumes that the jury was impelled to find someone guilty. Of course, there is nothing to support this speculation. Moreover, the Trial Court's clear instruction to the jury that it had the option to find the defendant "not guilty" vitiates the argument that the grant of immunity constituted a directed verdict.

Alternately, defendant argues (without any supporting authority) that by granting immunity, the Trial Judge in effect told the jury that he believed that the defendant, rather than Hall, was guilty. According to the argument, this constitutes an impermissible comment on the evidence in violation of Del.Const. Art. 4, § 19, Del.C.Ann. We do not agree.

Historically, a grant of immunity does not fall within the ambit of impermissible comment upon the evidence. In McFeat v. Philadelphia, W. & B. R. Co., Del.Supr., 69 A. 744 (1908), it was stated that while such comments by the Trial Judge "were made in the presence of the jury, they were not addressed to the jury, and therefore the provision of the Constitution [Art. 4, § 19 (then § 22)] * * * has no application." (69 A. at 746)

In any event, we are of the opinion that the effect of any statement by the Trial Court in this connection was cured by its instruction to the jury that they were the sole and exclusive judge of the facts, and that they had the option to find the defendant not guilty. Seeney v. State, Del. Supr., 211 A.2d 908 (1965); State Highway Department v. Buzzuto, Del.Supr., 264 A.2d 347 (1970).

We find no reversible error in the grant of immunity to Kevin Hall or the manner in which it was handled by the Trial Court.

### III.

Defendant was indicted before his scheduled preliminary hearing and therefore did not receive a preliminary hearing. Defendant contends that the absence of a preliminary hearing denied him due process, on the theory that he has a right to such a hearing or, alternately, that the denial of discovery available in a preliminary hearing constitutes a denial of due process.

### A.

■ There is no common law or constitutional right to a preliminary hearing. If the right exists, it must be statutory. State v. Wahl, Del.Supr., 263 A.2d 297, 299 (1970); Austin v. United States, 9 Cir., 408 F.2d 808 (1969). There is no statutory right to a preliminary hearing after indict-

ment. We have recently held that an indictment eliminates the need for a preliminary hearing. Joy v. Superior Court, Del. Supr., 298 A.2d 315 (1972).

Defendant contends that Superior Court Criminal Rule 5 * creates the right to a preliminary hearing after indictment. We have not heretofore considered that contention; we take this occasion to put it to rest.

Superior Court Criminal Rule 5 follows Federal Criminal Rule 5 almost verbatim. In interpreting Federal Criminal Rule 5, the Supreme Court of the United States has held that an indictment supersedes the Rule 5 preliminary hearing. Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

■ In accord with *Jaben* and *Joy,* we hold that Rule 5 has no application after indictment.

### B.

■ The defendant contends that he was denied due process because he was deprived of the discovery opportunities offered by a preliminary hearing. He cites Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965) for the proposition that an accused is entitled to a preliminary hearing for the purposes of discovery. We disagree. Rather, we agree with the many authorities which espouse the traditional view that discovery is only incidental to, and is not a purpose of, the preliminary hearing. Sciortino v. Zampano, 2 Cir., 385 F.2d 132 (1967), cert. denied 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968); United States v. Coley, 5 Cir., 441 F.2d 1299, cert. denied 404 U.S. 867, 92 S.Ct. 85, 30 L.Ed.2d 111 (1971); United States v. Foster, 7 Cir., 440 F.2d 390 (1971); Smith v. O'Brien, 109 N.H. 317, 251 A.2d 323 (1969); Timbers v. State, 2 Md.App. 672, 236 A.2d 756

(1968); see also L. Orfield, Criminal Procedure Under the Federal Rules, § 5.7.

The defendant relies upon our footnote in *Wahl* (263 A.2d 302, f. n. 6) in which reference is made to the importance of the preliminary hearing and "its dual function regarding probable cause and trial-saving discovery." The *Wahl* case involved the pre-indictment statutory right to a preliminary hearing. The footnote was addressed to the prosecutive practice, followed elsewhere, of unduly postponing preliminary hearings pending indictments in order to avoid the statutory right and the attendant disclosure of prosecution evidence. The instant case is not such a case. Here, the indictment was returned 4 days after arrest.

■ Accordingly, we conclude that the deprivation of incidental discovery did not deny due process to this defendant.

### IV.

The defendant contends that he was denied due process because the State failed to disclose certain evidence to him. In particular, defendant asserts that he was entitled to know (A) the statement made by Peter Hargrow that his wife was in a position to see the shooting; and (B) the contents of the prior inconsistent written statement made by witness Wilkes.

### A.

■ The defendant claims that if he were aware of Peter Hargrow's statement, he may have been able to exploit the lead that Mrs. Hargrow was in a position to see the shooting. Defendant asserts prejudicial suppression of evidence, relying upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942) and United States ex rel. Almeida v. Baldi, 3 Cir., 195 F.2d 815 (1952), cert. denied 345 U.S. 904, 73 S.Ct. 639, 97

---

* For the text of lengthy Rule 5, see State v. Wahl, 263 A.2d 297, 300, f. n. 5.

L.Ed. 1341 (1953). The cited cases are not applicable here; instead they apply to "perjured testimony, knowingly used by the State authorities * * * [and] the deliberate suppression by those same authorities of evidence favorable to ˋ[the defendant]." Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. at 178. Here there is no assertion that the information in question was "favorable" to defendant; instead we have only the claim that it may have provided "a lead". In addition, there is no evidence indicating that the State knew of the allegedly valuable information.

■ Although it is not required that the defendant conclusively demonstrate that the State deliberately withheld evidence favorable to him, more is required than the mere speculation in which defendant engages here. Compare Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 187 L.Ed. 214 (1942).

### B.

■ The defendant argues that the State should have introduced the original Wilkes statement, primarily on the basis of the best evidence rule. We have been cited no Delaware authority which applies the best evidence rule to prior inconsistent statements. Other jurisdictions have declined to so apply the best evidence rule. Wigmore on Evidence, § 1263 at 518, n. 5.

■ Defendant further contends that the "only logical interpretation" of the State's failure to produce the Wilkes prior written statement is that it contained information favorable to the defendant. Since Wilkes was a defense witness, defendant had ample opportunity to ascertain from her any favorable information contained in the statement. We conclude, therefore, that any error here would have been non-prejudicial. Rosenburg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 1234, 3 L.Ed.2d 1304 (1959).

### V.

The defendant makes several other arguments of which we make summary disposition:

■ It is argued by the defendant that, under Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the State was required to furnish to the defendant prior to trial a copy of the Wilkes written statement. Assuming, arguendo, the viability of the Jencks rule in Delaware, that rule is nevertheless inapplicable to the written statement of a defense witness. There is no merit to this contention.

■ Defendant argues that the State's repeated references to defense witnesses as "apostles of perjury" in its closing argument constitute reversible error. These statements were not objected to at the trial. We find no plain error in this connection.

■ The defendant urges us to reverse his conviction on the ground that the use of "the highly unreliable, if not perjured" testimony of Hall denies him due process, citing Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). We find Napue to be inapplicable here; Napue applies only to the knowing use of false or perjured testimony. There is nothing before us to indicate that the State knowingly used perjured testimony. The fact that there were contradictions within Hall's testimony does not require reversal. Zutz v. State, Del.Supr., 2 Storey 492, 160 A.2d 727 (1960).

■ Defendant contends that the State's opening argument that second degree murder is "unpremeditated murder" constitutes reversible error. We find no merit in this contention. It has long been held that second degree murder does not require a "deliberate mind or formed design to take a life." E. g., State v. Brown, Del.O. & T., 61 A. 1077, 1078 (1905).

The defendant asks us to reverse his conviction on the ground that a portion of the instructions to the jury assumes the existence of a disputed fact and invades the province of the jury to make its own determination of whether malice existed. It is axiomatic that when considering an alleged error in instruction, the charge to the jury must be viewed as a whole. We have considered the defendant's argument in the light of the Trial Court's entire charge and conclude that the arguments are without merit.

The defendant contends that four lines of questioning by the State constitute prejudicial error on the ground that they had no basis in fact. We have examined these contentions and find none rises to the level of reversible error.

\* \* \*

The Court finds no reversible error.

Affirmed.