**Barton H. SCHRAMM, Defendant below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted May 12, 1976.

Decided Aug. 24, 1976.

Arlen B. Mekler, Mekler & Maurer, Wilmington, for defendant below, appellant.

John J. O'Brien, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant appeals from his conviction on three charges of possessing non-narcotic Schedule I controlled substances 16 Del. C. § 4754 (one with intent to deliver) 16 Del.C. § 4752 and one charge of conspiracy in the third degree 11 Del.C. § 511. He contends that (1) there was an insufficient showing of the credibility of an informant and the reliability of his information to establish probable cause to stop and search defendant's car and to arrest him without a warrant; and that (2) it was error for the Justice of the Peace to admit the hearsay statements of the informant in a preliminary hearing absent a showing of the informant's credibility.

I

At approximately 2:00 p. m., a state police officer attached to a special investigative drug unit, received a telephone call from an unnamed individual whom the officer had known personally for several years. The officer also knew that the caller was a drug-trafficker presently awaiting trial on drug charges. The caller informed the officer that Barton Schramm, the defendant, had told him earlier in the day that he was going to Philadelphia to buy a large quantity of drugs, and would be transporting them back to Delaware. The informant stated he believed that Schramm would be returning "anytime soon" via I-95 because he had been with him previously on a similar mission when they had taken that route. He further informed the officer that defendant, a thin, white male with a mustache, would be riding in a dark brown 1974 Mustang II with a light tan top and Pennsylvania license; that the destination would either be defendant's home in Woodside Apartments, Newark, or the Presidential Towers (apartments) near the Naamans Road exit off of I-95.

The officer, who had heard from other informants that Schramm was involved in drug trafficking, picked up the informant in the area of I-95, and at approximately 2:45 p. m. the Mustang II was sighted. The informant pointed out Schramm riding in the passenger seat.

Pursuit was undertaken via I-95 to the Naamans Road exit, and Presidential Towers, which the officer knew to be the residence of Wallace, another drug dealer, whom he had previously arrested and who the informant stated was involved in the traffic with Schramm. The car was stopped, defendant was arrested, and a search was conducted revealing a large quantity of drugs which were seized and admitted as evidence at trial.

At the preliminary hearing the arresting officer described the events, including the informant's statements, and defendant was held for trial in Superior Court. He was subsequently indicted, and following a suppression hearing, was tried and convicted.

## II

Defendant argues that the drugs seized pursuant to the warrantless on-the-scene search of the automobile should have been suppressed from evidence because the informant's tip was not sufficiently reliable to establish probable cause.

■ There is no more jealously guarded right than that of an individual under the Fourth Amendment to be free from unreasonable governmental intrusions upon his person and property; thus, searches and seizures conducted without a warrant—where there has been no prior determination of probable cause for the intrusion by some neutral and detached person—"are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. U. S.*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); but see *U. S. v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). One such exception, and the one applicable here, permits the warrantless search of an automobile where at the time of the "initial intrusion", i. e., when the car is stopped or "seized", there exists both probable cause to justify the seizure and exigent circumstances making it impracticable to secure a warrant beforehand. *Coolidge v. New Hampshire, supra; Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Brinegar v. U. S.*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. U. S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925); *Freeman v. State*, Del. Supr., 317 A.2d 540 (1974).

■ The existence of exigent circumstances excusing the failure to obtain a warrant has not been questioned here, and we find this element has been satisfied by the fact that defendant would be returning by car "anytime soon." Thus, the critical issue is that of probable cause which the State seeks to base on the unnamed informant's tip.

■■ It is an established principle that such hearsay information is an acceptable basis for probable cause provided that the tip is shown to be reliable and trustworthy through corroboration by other facts within the officer's knowledge, *Spinelli v. U. S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Shantz v. State*, Del.Supr., 344 A.2d 245 (1975); *Garner v. State*, Del.Supr., 314 A.2d 908 (1973). In order for the Court (in the case of search or arrest without a warrant) or for the Justice of the Peace (where a warrant is sought) to determine probable cause, the law requires that there be a showing that (1) the informant acquired his information in a reliable manner, and that (2) there are sufficient reasons for believing the informant himself is credible or his information is trustworthy. *U. S. v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. U. S., supra; Aguilar v. Texas, supra; Shanty v. State, supra; Garner v. State, supra; Wilson v. State*, Del.Supr., 314 A.2d 905 (1973).

■ In the instant case, we find the first requirement has been satisfied through the informant's declaration that he acquired his information directly from a conversation he had with the defendant earlier that day. This conclusion is reinforced by the informant's detailed description of defendant's proposed criminal activity, from which it may reasonably be inferred that the informant is speaking from personal knowledge. *Spinelli, supra; Draper v. U. S., supra; Marvel v. State*, Del.Supr., 290 A.2d 641 (1972).

■ The more difficult question, and the one to which the parties direct the bulk of their argument, concerns the second requirement of *Aguilar-Spinelli*, that there be sufficient reasons for believing that the informant is credible or his information trustworthy. Defendant first contends that the record shows this informant's credibility is suspect because (1) the officer knew

he was a drug trafficker with drug-related charges pending against him at the time in question, to which he subsequently was allowed to plead to a lesser offense, and (2) because he had never furnished reliable information in the past.

■■■ The trustworthiness of the informant can be shown through various means; and while a law-abiding citizen carries his own indicia of honesty, cf. *Wilson v. State, supra,* and while past instances of reliability, although insufficient to establish probable cause standing alone, *Garner v. State, supra,* are oftentimes to be given great weight, cf. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 2d 62 (1967), neither of these facts is the *sine qua non* of present credibility, *U. S. v. Harris, supra;* also see *Shantz v. State, supra.* Nor are we persuaded that the informant's known criminal involvement and pending charges automatically render him unbelievable; indeed, under some circumstances, those facts might suggest the contrary: through personal involvement in drug activity, there exists the likelihood that he would be familiar with the activities of other drug traffickers. The rules governing inquiries into the credibility of informants must not be so strict as would tend to discourage positive and desirable assistance to law enforcement agencies. We do not attach to the fact of this informant's own criminal involvement the absolute negative weight of enforced suspicion of his credibility which defendant appears to urge upon us and which presumably would place upon the State a most difficult burden of proving their informant to be trustworthy. Nevertheless, the record here does not reveal sufficient indicia of the informant's personal credibility; there-

fore, the present trustworthiness of his information must be shown, if at all, through other corroborative evidence.

Defendant argues that the only other possibly corroborative evidence is the officer's verification of the details of the tip, but that these details, as in *Garner v. State, supra,* were insufficient in quantity and related solely to innocuous activity.

In *Garner,* the victim was robbed by a masked-man whom he was unable to identify; he did, however, identify the co-defendant as being present at the scene. After a search was begun for the co-defendant, the police received a tip from an unnamed informant which ultimately led to defendant's arrest and subsequent lineup identification. We held that the informant's tip was insufficient to establish probable cause, and that therefore, the arrest based thereon was illegal, and the identification directly resulting therefrom was unlawfully taken as "fruit of the poisonous tree."

In *Garner,* the informant's tip identified the defendant as the masked man who had committed the robbery and stated that defendant and co-defendant would be at a certain place at a particular time; the informant further described the route and vehicle the men would be taking. However, the officer did not fully divulge the informant's information, and in particular, he did not state any facts to show how the information that defendant was the masked-man, was obtained.[1] Instead, the State sought to establish reliability solely on the basis of the detailed tip and verification of those details prior to the arrest, relying on *Draper v. U. S.,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

---

1. On reargument, the State presented a statement of the officer from the suppression hearing that informant had told police that he had "direct personal contact" with the defendants and thus had first hand information about their participation in the robbery. We found this statement insufficient to establish the reliability of the source since there was no

accompanying explanation of the informant's involvement with the defendants or of his proximity to the allegedly overheard conversation. No such problem exists in the instant case because the informant stated he obtained his information from personal conversation with the defendant.

In *Draper,* the police received information from an informant who had given accurate information in the past. On this occasion, he informed police that defendant was going on a trip to buy drugs and would be returning in a few days. The informant described the mode of transportation, probable date of arrival, defendant's physical characteristics, dress and accessories. He also stated that defendant would be carrying the drugs in a special valise and that he habitually walked very fast. All this information proved accurate and was held to establish probable cause.

We held that *Draper* did not control *Garner.* In *Draper,* the detail regarding the planned criminal activity as well as the physical description, was such that it could reasonably be inferred that the informant had gained his information in a reliable manner, and not by way of general rumor or reputation; and, through the officers' subsequent personal verification of those details, it became apparent that the informant had not been fabricating his report. See *Spinelli v. U. S., supra.* In *Garner,* however, the "details" concerned innocuous activity, wholly unrelated to the tip that defendant was the robber, and thus those details in no way indicated that the informant gained this information in a reliable way; nor did the verification of those details tend to corroborate or otherwise indicate that the informant had not reported a made-up story with respect to defendant's alleged participation in the crime.

We believe the instant case more closely resembles *Draper* than *Garner,* and defendant's reliance on the latter is misplaced. First, as in *Draper,* the reliability of the source of the information has been established here. Secondly, as in *Draper,* most of the additional facts related and verified (mode of transportation, time and route of arrival, destination, particular description of the car and defendant's physical appearance) described in more particularity defendant's proposed criminal activity; they were not, as in *Garner,* simply statements of innocent activity with absolutely no relevance to the alleged crime. Furthermore, unlike *Garner,* in addition to the officer's verification of the informant's information, other facts were known by the officer independently and corroborative of the informant's information. Specifically, the officer stated that the informant said that defendant was involved in drug dealing with Wallace, whom the officer knew was a drug trafficker and resided at Presidential Towers, the alleged destination; the vehicle stopped in front of the building wherein the officer knew Wallace resided; the informant accompanied the officer in his surveillance; the officer knew this particular informant personally for several years; and the officer had received information from other informants that defendant was involved in drug trafficking, cf: *Harris v. U. S.,* supra; *Jones v. U. S.,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Together, all the above facts and circumstances known and verified by the officer, provided sufficient corroboration of the informant's tip so that the officer was warranted in believing that it was trustworthy, and on this basis, at the time in question, he had probable cause to stop and search defendant's vehicle.

Accordingly, there was no error in admitting the drugs seized into evidence.

### III

Defendant contends that it was error for the Justice of the Peace at the preliminary hearing to admit the hearsay statements of an informant, probative of the question of intent to deliver drugs, absent a preliminary showing of the informant's credibility.

A preliminary hearing is not a trial where strict rules of evidence must apply and where the concern is guilt beyond a reasonable doubt. The purpose of the hearing is simply to have a neutral and detached person hear the evidence, to de-

termine therefrom if "there is probable cause to believe that an offense has been committed and that the defendant committed it," and if so, to bind defendant over for trial in the appropriate court. Super. Ct.Crim. Rule 5.1(a); J.P.Crim. Rule 2(c). The difference between the two proceedings is clear:

> "Trials are necessarily surrounded with evidentiary rules 'developed to safeguard men from dubious and unjust convictions.' [citation omitted] But before the trial we deal only with probabilities that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [citations omitted]." *U. S. v. Harris,* 403 U. S. at 582–583, 91 S.Ct. at 2081, 29 L.Ed. 2d at 733.

■ For this reason, probable cause does not demand the quantity and quality of evidence of each element of the offense charged as would be needed to support a conviction.[2] *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In sum, probable cause is a common sense determination. *Edwards v. State,* Del. Supr., 320 A.2d 701, 703 (1974).

■ To this end, while the hearing magistrate must remain neutral and de-

tached, he only need hear enough evidence to satisfy himself that probable cause exists, subject to defendant's right to cross-examine and produce evidence in his own behalf. J.P.Crim. Rule 2(c); Super.Crim. Rule 5.1(a). He should consider the evidence presented without regard to whether that evidence may or may not be admissible if and when the case reaches the trial stage. For this reason, hearsay is admissible in a preliminary hearing with no requirement that the Justice of the Peace first determine if that hearsay is reliable, unless, of course, the Justice of the Peace in his discretion believes an inquiry into credibility of witnesses or reliability of the information is necessary to satisfy himself that probable cause exists. Cf. *Hamilton v. McLaughlin,* Del.Super., 317 A.2d 542 (1974).

■ In this particular case, defendant was indicted by the Grand Jury subsequent to the preliminary hearing. Thereafter, the Trial Court's jurisdiction was predicated upon the indictment and not the decision of the Justice of the Peace. Accordingly, the propriety of that decision is now moot.[3] *Joy v. Superior Court,* Del.Supr., 298 A.2d 315 (1972).

Affirmed.

---

**2.** Nowhere is this more evident than in the present case. Defendant was arrested for possession of a substantial quantity of drugs, and charged with intent to deliver. At trial, mere possession and quantity is insufficient to *prove beyond a reasonable doubt* defendant intended to deliver the drugs; on the other hand, "factual and practical considerations of everyday life" as well as his own common sense, could lead a reasonable man to believe the defendant *probably* intended to deliver drugs when he is found in possession of a large quantity.

**3.** Nothing said in this opinion is intended to relieve the hearing magistrate of his constitutional obligation to remain neutral and detached, not to function merely as a rubber stamp for the police. *Aguilar v. Texas, supra.*