Joshua C. HOLDER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 241, 1996.

Supreme Court of Delaware.

Submitted: March 4, 1997.
Decided: April 3, 1997.
Rehearing Denied May 6, 1997.

Andre M. Beauregard (argued), and John G. Russell of Brown, Shiels & Chasanov, Rehoboth Beach, Delaware, for appellant.

John Williams, Deputy Attorney General, Dover, Delaware, for appellee.

Before WALSH, HOLLAND, and HARTNETT, JJ.

HOLLAND, Justice:

The defendant-appellant, Joshua C. Holder ("Holder"), a juvenile, was indicted for the charges of Murder in the Second Degree and Conspiracy in the Second Degree. The State subsequently entered a *nolle prosequi* on the conspiracy charge. Following a jury trial in the Superior Court, Holder was convicted of Manslaughter.

Holder has raised several issues in this direct appeal. First, Holder contends that the Superior Court erred in refusing to send his case to the Family Court for a preliminary hearing notwithstanding his indictment. According to Holder, the statutory scheme entitles a juvenile to a preliminary hearing in Family Court, regardless of whether the juvenile has been indicted on the charged offenses. Second, Holder contends that the Superior Court abused its discretion by refusing to transfer his case to the Family Court for a trial on the merits of a lesser charge. Specifically, Holder asserts that at the reverse amenability hearing, the State failed to establish a fair likelihood of convicting him of Murder in the Second Degree. Third, Holder alleges the Superior Court erred by permitting the State to proceed against him at trial under a theory of accomplice liability. Fourth, Holder claims that he was denied due process of law at his trial. Specifically, it is alleged that the Superior Court improperly denied Holder's trial attorney the opportunity to question Holder, on redirect examination, regarding Holder's demeanor during the Delaware Medical Examiner's testimony. Fifth, Holder alleges that the Superior Court erred in admitting into evidence, for purposes of impeachment, statements that Holder had made to a detention facility counselor. According to Holder, his statements to the counselor were either privileged, obtained in violation of *Miranda*, or were given involuntarily.

This Court has concluded that all of Holder's contentions on appeal are without merit. Accordingly, we affirm the judgment of the Superior Court.

### Facts

Holder was sixteen years old at the time of the incident leading to his conviction of Man-

slaughter. This criminal proceeding originated from the beating death of Michael Keesser ("Keesser"). Many of the facts are set forth in this Court's prior opinion in a companion case. *Chance v. State*, Del.Supr., 685 A.2d 351 (1996).

On August 19, 1994, Holder attended a birthday party in Dover at the house of Paul Lunsford ("Lunsford"). During the party, a fight erupted in the house and escalated into a larger fight that continued in the front yard. Keesser died as a result of injuries he received in the fight.

After the fight, Holder left the Lunsford residence. He returned later, however, entering the house through a back window. Holder remained there all night. The next morning police detectives took Holder into custody at Lunsford's home.

In the police car, on the way to the police station, Holder denied being at the party. Later at the police station, however, Holder admitted to being at the party and taking part in the fighting. Holder also admitted to kicking the homicide victim in the head during the fighting and punching that same person in the ribs.

At trial, Holder again admitted to kicking someone in the head, but he claimed that his prior admission to the police referred to kicking Jason Moffett, another person in the fight. At trial, he also claimed that he thought the homicide victim was Steven Gunser, who was also involved in the fighting that night, and not Keesser.

### Divestiture by Indictment
### Juvenile Right to Preliminary Hearing

■ Holder was arrested on August 20, 1994 and charged with Murder in the Second Degree and Conspiracy in the Second Degree. Holder requested a preliminary hearing in the Family Court and one was scheduled for September 8, 1994. Holder's first contention is that the Superior Court erred by refusing to transfer his case to the Family Court for a preliminary hearing after he had been indicted.

Holder was indicted in the Superior Court on September 6, 1994 on the same charges for which he had been arrested. Holder sought to have the Superior Court dismiss the indictment and allow the matter to proceed to the previously scheduled preliminary hearing in the Family Court. The Superior Court denied the motion.

Holder contends that a juvenile has a statutory right to a preliminary hearing in Family Court regardless of whether the juvenile has been indicted. Holder asserts that this absolute right is conferred by 10 *Del.C.* § 1010(b) ("Section 1010(b)"). Section 1010(b) provides that in cases where a juvenile is to be proceeded against as an adult, including Murder in the Second Degree; "the [Family] Court shall, upon application, hold a preliminary hearing and, if the facts warrant, thereafter refer the child to the Superior Court." 10 *Del.C.* § 1010(b).

This Court has previously recognized that there "is no common law or [United States] constitutional right to a preliminary hearing." *Jenkins v. State*, Del.Supr., 305 A.2d 610, 614 (1973). In *Jenkins*, this Court explained that the right to a preliminary hearing may be provided by statute. *Id.* Such a procedural right may also be established by court rule.

In fact, the Superior Court adopted a rule which affords such a right to adult defendants in a criminal proceeding. Super.Ct.Crim.R. 5(d). Rule 5 of the Superior Court Rules of Criminal Procedure ("Rule 5") provides: "A defendant is entitled to a preliminary examination, unless waived, when charged with any offense that is within the exclusive jurisdiction of, or that the attorney general chooses to prosecute in, Superior Court." *Id.* Rule 5 further provides, however, that "the preliminary examination shall not be held if the defendant is indicted or if an information against the defendant is filed in Superior Court before the date set for the preliminary examination." *Id.*

■ The purpose of a preliminary hearing is to have a neutral and detached determination of whether probable cause exists to believe that an offense has been committed and that the defendant committed it. Super.Ct.Crim.R. 5.1(a); *see Schramm v. State*, Del.Supr., 366 A.2d 1185, 1191–92 (1976). If the evidence presented at the preliminary hearing establishes that probable cause ex-

ists, the defendant will be bound over for indictment or trial in the appropriate court. *Schramm v. State,* 366 A.2d at 1192. Likewise, "an indictment itself is in effect a finding of probable cause." *Joy v. Superior Court,* Del.Supr., 298 A.2d 315, 316 (1972); *see Smith v. State,* Del.Supr., 344 A.2d 251, 253 (1975). Accordingly, because the focus of both a preliminary hearing and an indictment is a determination of probable cause, an indictment eliminates the need for a preliminary hearing. *Smith v. State,* 344 A.2d at 253; *Jenkins v. State,* 305 A.2d at 615; *Joy v. Superior Court,* 298 A.2d at 316.

The nature of a delinquency proceeding is inherently hybrid. The United States Supreme Court has acknowledged that although juvenile hearings that result in adjudications of delinquency are described as civil, they are realistically more like criminal trials. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Therefore, the Court in *Gault* held that the United States Constitution guarantees a juvenile the "essentials of due process and fair treatment" that are afforded to an adult defendant in a criminal prosecution. *Id.* at 31, 87 S.Ct. at 1445–46.

■ There is no Federal Constitutional right, however, to a preliminary hearing. Rule 5 affords such a right to an adult criminal defendant in Delaware. That right is available, however, only to an adult defendant who has not yet been indicted on those charges. *Smith v. State,* 344 A.2d at 253.

By statute, the right to a preliminary hearing has been extended to juveniles. *Compare* 10 *Del.C.* § 1010(b) *with* Super.Ct.Crim.R. 5(d). The juveniles' statutory right to a preliminary hearing, like the right conferred on adults by Rule 5, is subject to divestment by grand jury indictment. *Compare* 10 *Del.C.* § 1010(b) *and* Fam.Ct. Crim.R. 6C [1] *with* Super.Ct.Crim.R. 5(d); *see also Jenkins v. State,* 305 A.2d at 615. Once a juvenile is indicted by a grand jury, there has been a neutral determination of probable

cause and there is no need for a neutral determination of probable cause at a preliminary hearing. *Accord* Fam.Ct.Crim.R. 6C(b). Therefore, the Superior Court properly denied Holder's motion to transfer his case to the Family Court for a preliminary hearing after Holder had been indicted.

### *No Abuse of Discretion Reverse Amenability Hearing*

■ Holder's next contention is an allegation that the Superior Court abused its discretion by refusing to transfer his case to the Family Court, for a trial on the merits of a lesser charge, based upon the State's evidentiary presentation at the reverse amenability hearing. According to Holder, the State's evidence failed to establish a fair likelihood that he could be convicted of Murder in the Second Degree. In support of that contention, Holder points out that the jury convicted him at trial of Manslaughter, a lesser included offense of Murder in the Second Degree.

■ The role of the Superior Court at a reverse amenability hearing is to determine, *inter alia,* whether there is a fair likelihood that the defendant will be convicted as charged. *Marine v. State,* Del.Supr., 624 A.2d 1181, 1185 (1993). Such a determination is reviewed on appeal for abuse of discretion. *Id.* at 1183. The Superior Court's decision will be affirmed if it is supported by the record and is the product of a logical deductive reasoning process.

In this case, the Superior Court properly recognized that its role at the reverse amenability hearing was to "look at the totality of the limited evidence and to decide whether it establishes a fair likelihood of conviction," not whether there was proof beyond a reasonable doubt of the charged offense. *State v. Mayhall,* Del.Supr., 659 A.2d 790, 792 (1995). In outlining the factual basis for its ruling, the Superior Court noted that Holder was at the party and admittedly participated

---

1. Rule 6C(a) of the Family Court Rules of Criminal Procedure provides: "A child is entitled to a preliminary hearing when charged with an offense within the original jurisdiction of the Superior Court or has been found non-amenable after a hearing as provided by statute." Rule 6C(b) of the Family Court Rules of Criminal Procedure further provides, however, "the preliminary hearing shall not be held if the child is indicted or if any information against the child is filed in Superior Court before the date set for the preliminary hearing."

in the fighting; that James Mayhall, who was also charged with Murder in the Second Degree for Keesser's death, told police that he saw Holder kicking and punching the victim; that another witness gave a statement that he saw Holder kick the victim three times; and that Holder admitted to the police that he punched and kicked the victim. *Id.* at 792–93. The Superior Court examined the elements of Murder in the Second Degree and concluded that, based on the evidence presented, there was a fair likelihood of the State proving that Holder acted recklessly under circumstances which manifested a cruel, wicked and depraved indifference to human life. *Id.* at 793.

The record reflects that the evidence presented at the reverse amenability hearing supports the Superior Court's conclusion that the State had established a fair likelihood that Holder could be convicted of Murder in the Second Degree. The Superior Court's decision not to transfer Holder's case to the Family Court for a trial on the merits was the product of a logical and orderly deductive process. *See id.* Holder's assertions to the contrary are without merit.

### Accomplice Liability Theory
### State Properly Permitted to Proceed

■ Holder was indicted as a principal on the charge of Murder in the Second Degree. Holder's next contention is that the Superior Court erred by allowing the State to proceed against him at trial under the theory of accomplice liability. According to Holder, he did not have notice that the State would proceed against him under such theory.

The indictment puts the accused on notice of the charge he or she is called upon to defend. *Malloy v. State*, Del.Supr., 462 A.2d 1088, 1092 (1983). Delaware law provides that a defendant indicted as a principal may be convicted as an accomplice. 11 *Del.C.* § 275(a)[2]; *Chance v. State*, Del.Supr., 685

2. Section 275(a) provides: "A person indicted for committing an offense may be convicted as an accomplice to another person guilty of committing the offense." 11 *Del.C.* § 275(a).

3. The United States Court of Appeals for the Third Circuit in *Riggi* acknowledged that the tradition in federal courts is to limit scope of

A.2d 351 (1996); *Dixon v. State*, Del.Supr., 673 A.2d 1220, 1228 (1996); *Probst v. State*, Del.Supr., 547 A.2d 114 (1988). The record reflects that the Superior Court properly permitted the State to proceed against Holder under the accomplice liability theory.

### No Abuse of Discretion
### Limiting Questions on Redirect
### Examination

■ Holder contends that the Superior Court improperly denied his trial attorney the opportunity to question him regarding his demeanor during the Medical Examiner's testimony. Holder's trial attorney attempted to establish, on redirect examination, why Holder was grieved by Keesser's death. According to Holder, his explanation about his reaction to the Medical Examiner's testimony would have served to rebut any inference the jury may have drawn that the emotional distress he exhibited at trial reflected a consciousness of guilt. The Superior Court, however, ruled that the proposed question about Holder's demeanor during the Medical Examiner's testimony was beyond the scope of cross-examination. Accordingly, the Superior Court sustained the State's objection.

■ It is within the trial court's discretion to exclude testimony on cross-examination that is outside scope of direct examination. *Hamann v. State*, Del.Supr., 565 A.2d 924, 928 (1989). Accordingly, the Superior Court's evidentiary ruling, limiting redirect examination to the scope of the cross-examination, is reviewed for an abuse of discretion. *Cf. id.; accord United States v. Riggi*, 3d Cir., 951 F.2d 1368, 1375 (1991).[3] In this case, the record supports the Superior Court's ruling that the questions about Holder's demeanor at trial were beyond the scope of the State's cross-examination. Holder has presented no reason why the proposed testimony about his demeanor at trial could not

redirect examination to subject matter brought out on cross-examination. *United States v. Riggi*, 951 F.2d at 1375. The court further explained that new information may come out on redirect when the trial court, in its discretion and in the interest of justice, determines that the information is relevant and admissible. *Id.*

have been presented during direct examination.

It is impermissible for the State to comment about the demeanor during trial of a defendant who did not testify. *Hughes v. State*, Del.Supr., 437 A.2d 559, 572 (1981). In this case, although Holder did testify and was being questioned by his attorney, the Superior Court properly concluded that any questions about Holder's demeanor during trial, even if otherwise permissible, were beyond the scope of Holder's cross-examination by the State. Accordingly, the Superior Court properly exercised its discretion in limiting the redirect examination of Holder by his attorney.

### Statements to Counselor
### Properly Admitted

■ Holder's next contention is an allegation that the Superior Court erred by allowing his statements to a counselor to be used for impeachment purposes. After being arrested on August 20, 1994, Holder was committed to the Stevenson House, a State detention facility for juvenile offenders, to await a bond hearing. While at the Stevenson House, Holder was interviewed by Joseph McCorquodale ("McCorquodale"), a counselor on the Stevenson House staff.

At trial and in this appeal, Holder submits that the statements he made to McCorquodale are privileged communications pursuant to Rule 503 of the Delaware Rules of Evidence ("D.R.E. 503"). D.R.E. 503(b) provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psycho-

therapist, including members of the patient's family.

D.R.E. 503(b).

The Superior Court found no factual basis to support Holder's assertion of the privilege provided for in Rule 503. The Superior Court ruled:

[McCorquodale], although representing himself as a counselor, has not represented himself as a psychotherapist, nor was he licensed in this state or in any other state. No basis for the privilege has been shown at the evidentiary hearing on the motion to suppress. The motion is therefore denied.

McCorquodale testified that he is neither a physician nor a psychotherapist. The record also reflects that McCorquodale was not participating in the diagnosis or treatment of Holder under the direction of a physician or a psychotherapist when he met with Holder at the Stevenson House.[4] Because Holder failed to establish any of the requirements set forth in Rule 503, the Superior Court properly denied the motion to suppress Holder's statements to McCorquodale on the basis of privilege.

■ Alternatively, Holder contends that the introduction of the statements he made to McCorquodale could not be used by the State for any purpose because they were obtained in violation of the rights set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Holder alleges that McCorquodale, a state agent, was required to give *Miranda* warnings to Holder, who was in custody, before McCorquodale spoke to Holder. This Court addressed a similar issue in *Bradley v. State*, Del.Supr., 559 A.2d 1234 (1989).

In *Bradley*, an incarcerated defendant was questioned by a parole officer and the director of pre-release services. *Id.* at 1242–43. The questioning took place while the defendant was in prison. *Id.* Neither the parole officer nor the director of pre-release services advised the defendant of complete *Miranda* rights. *Id.* at 1243. This Court determined that the parole officer and di-

---

4. Although McCorquodale testified that sometimes he works under the direction of a psychotherapist, he specifically stated that he was not working in such a capacity when he met with Holder.

rector were State officials. *Id.* at 1244. This Court further concluded that because Bradley was in prison and the questions might elicit an incriminating response, the interview qualified as custodial interrogation. *Id.* at 1244–45.

In the absence of *Miranda* warnings, this Court held in *Bradley* that the defendant's statements could not be used against him by the State during the prosecution's case-in-chief. *Id.* at 1246 (citing *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)). Accordingly, this Court held that Bradley's statements "may not be used in a new trial unless Bradley testifies." *Id.* at 1246–47. We explained further, however, that "even if Bradley does choose to testify, his prior statements could be used only to impeach his testimony." *Id.* at 1247 (citing *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)).

The record reflects that the initial facts in this case are similar to the facts in *Bradley*. Holder was in custody at the Stevenson House and he did not receive *Miranda* warnings prior to speaking to a state agent, McCorquodale. Additionally, McCorquodale should have known that his questions might elicit an incriminating response from Holder.

The State did not seek to introduce Holder's statements during its case-in-chief. The State only sought to use the statements Holder made to McCorquodale for impeachment purposes, after Holder testified that he did not speak to McCorquodale. It is well established law that even if an otherwise voluntary statement is obtained in violation of *Miranda*, the prosecution is not prohibited from introducing the statement on rebuttal for purposes of impeachment after the defendant has testified. *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971).

Holder alleged that the statements could not be used to impeach his testimony because they were not given voluntarily. The record reflects that, after an extensive inquiry, the Superior Court concluded that Holder's statements to McCorquodale had been given voluntarily. The record supports the Superior Court's factual finding that the statements were given voluntarily. Consequently, we hold that the Superior Court properly allowed the State to use Holder's statements to McCorquodale for the purpose of impeachment. *See Bradley v. State*, 559 A.2d at 1247.

### Conclusion

A juvenile is not entitled to a preliminary hearing in Family Court after an indictment has been issued by a grand jury on the same charges. Accordingly, the Superior Court was correct in refusing to transfer the case to the Family Court for a preliminary hearing. Second, the Superior Court properly exercised its discretion, in refusing to transfer Holder's case to the Family Court for a trial on the merits of a lesser charge, after the reverse amenability hearing. Third, the Superior Court properly permitted the State to proceed under a theory of accomplice liability. Fourth, the Superior Court properly exercised its discretion by limiting the redirect examination of Holder to the scope of the cross-examination. Finally, the Superior Court properly ruled that Holder's voluntary, albeit un-*Mirandized*, statements to the Stevenson House counselor could be used by the State for impeachment purposes. Therefore, the judgment of conviction of Manslaughter is affirmed.