# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 1610003829 |
| | ) | |
| STEVEN PIERCE, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: September 25, 2017
Date Decided: October 2, 2017

### *Upon Defendant's Motion to Suppress Evidence*
**DENIED in part; GRANTED in part**

Defendant Steven Pierce ("Defendant") was indicted on December 5, 2016 on charges of Murder in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. On July 6, 2017, Defendant filed a motion to suppress his interview with police for all purposes, including impeachment purposes, on the grounds that his constitutional rights were violated. The State opposes Defendant's motion seeking admission of Defendant's statement for impeachment only, if applicable. Upon consideration of the facts, arguments, and legal authority set forth by the parties; statutory and decisional law; and the entire record in this case, the Court hereby finds as follows:

1.     On July 9, 2016, Heather Stamper was found murdered in her home. Defendant had been involved in a relationship with Stamper.

2. On July 10, 2016, Defendant was interviewed by Detectives Csapo and Grassi of the Delaware State Police (collectively the "Detectives").

3. At the start of the interview, the Detectives advised Defendant of his *Miranda* rights.[1] Defendant initially agreed to give a statement to the Detectives.

4. About halfway through the interview, Defendant stated, "Look, can I speak to an attorney." Defendant followed that request by stating, "I need to speak to an attorney."

5. The Detectives did not immediately cease the interview. Instead, the Detectives informed Defendant that his statements conflicted with that of other witnesses and asked Defendant if he would like to keep talking to them. Defendant agreed to continue the interview.

6. Shortly thereafter, Defendant again requested an attorney. Defendant told the Detectives, "An attorney be good." He followed that statement by stating, "I want an attorney," three times.

7. The Detectives again did not immediately cease the interview.

8. On July 6, 2017, Defendant filed a motion to suppress contending that the Detectives violated his right to counsel and, therefore, that the State should be prohibited from using Defendant's interview during its case-in-chief. Defendant

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

2

thereafter filed a supplement in support of the motion to suppress contending that the statement should also be excluded for impeachment purposes.

9. In its response, the State concedes that any statements made by Defendant *after* he first invoked the right to counsel should be suppressed. However, the State contends that any statements Defendant made *prior* to the first invocation are admissible in the State's case-in-chief. In addition, the State argues that the entire statement is admissible for impeachment purposes, if Defendant elects to testify and contradicts the statement he gave to the Detectives.

10. *Miranda* requires that police questioning immediately cease if a defendant invokes the right to counsel.[2] After a defendant invokes the right to counsel, the defendant "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."[3]

11. Any statements Defendant made *after* he first invoked the right to counsel must be suppressed. Upon Defendant's first requested for an attorney in this case, the Detectives were required to cease the interview until counsel was made available to Defendant. The Detectives failed to do so. Therefore, the State may not

---

[2] *Id.* at 473-74.
[3] *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

3

use *any* statements made by Defendant *after* his first invocation of his right to counsel in its case-in-chief.

12. However, the *Miranda* violation does not require the entire statement to be suppressed in the State's case-in-chief. The Detectives advised Defendant of his *Miranda* rights at the start of the interview. Defendant gave a knowing, intelligent, and voluntary waiver of those rights when he agreed to give a statement to the Detectives.[4] The subsequent *Miranda* violation does not require that statements made in compliance with *Miranda* be suppressed.[5] Therefore, any statements made by Defendant *prior* to the *Miranda* violation are admissible in the State's case-in-chief.

13. In *Harris*, the United States Supreme Court held that a statement that is inadmissible in the prosecution's case-in-chief is not necessarily barred for impeachment purposes if the statement is otherwise trustworthy.[6] The Supreme Court stated, "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."[7] The Delaware Supreme Court subsequently held, "It is

---

[4] *See Miranda*, 384 U.S. at 444 (providing that a defendant may waive his rights provided that the waiver is made voluntarily, knowingly, and intelligently).
[5] *See, e.g., State v. Pulliam*, 2012 WL 6845693, at *8 (Del. Super. 2012) (excluding only those statements made after the defendant's invocation of his right to remain silent during his police interview).
[6] *Harris v. New York*, 401 U.S. 222, 224 (1971).
[7] *Id.* at 226.

4

well established law that even if an otherwise voluntary statement is obtained in violation of *Miranda*, the prosecution is not prohibited from introducing the statement on rebuttal for purposes of impeachment after the defendant has testified."[8]

14.    In determining whether a statement is trustworthy, the Delaware Supreme Court has held that voluntariness is an important element to be considered.[9] When considering voluntariness, the Court should consider "the specific tactics used by the police in eliciting the statements, the details of the interrogation, and the characteristics of the defendant."[10]

15.    Defendant's entire interview with the Detectives is admissible for impeachment purposes should Defendant testify inconsistently at trial.    The Detectives' violation of *Miranda* does not automatically render Detective's statement untrustworthy.[11]    In *Foraker v. State*, the Delaware Supreme Court considered the fact that the defendant was not "physically or psychologically coerced," that the defendant was of average intelligence, and that he had prior police

---

[8] *Holder v. State*, 692 A.2d 882, 888 (Del. 1997).
[9] *Hill v. State*, 316 A.2d 557, 560 (Del. 1974).
[10] *DeJesus v. State*, 655 A.2d 1180, 1196 (Del. 1995).
[11] *See, e.g., State v. Nelson*, 1998 WL 960736, at *5 (Del. Super. 1998) ("...[W]hile failure to respect the right to cut off questioning will render a statement inadmissible during the prosecution's case, it does not render the statement involuntary, much less untrustworthy, automatically.").

experience in concluding that his statements to police were trustworthy.[12] Similarly, in the case before the Court, Defendant was not physically or psychologically coerced by the Detectives, does not have below average intelligence, and has prior police contact. Therefore, Defendant's statements to the Detectives are sufficiently trustworthy to be admissible for impeachment purposes.

16. Accordingly, for the reasons stated, any statements made by Defendant before he invoked the right to counsel are admissible; any statements made by Defendant after he invoked the right to counsel are inadmissible in the State's case-in-chief; and Defendant's entire statement is admissible for impeachment should Defendant testify inconsistently at trial.

**NOW, THEREFORE, this 2nd day of October, 2017, the Defendant's Motion to Suppress is hereby DENIED in part and GRANTED in part.**

**IT IS SO ORDERED.**

_____
**The Honorable Andrea L. Rocanelli**

---

[12] *Foraker v. State*, 394 A.2d 208, 212 (Del. 1978).