James GARNER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Sept. 14, 1973.

Rehearing Denied Dec. 18, 1973.

Ernest S. Wilson, Jr., of Wilson & Russell, Wilmington, and Henry A. Wise, Jr., of Booker, Green, Shaffer, Berl & Wise, Wilmington, of counsel, for defendant below, appellant.

Daniel F. Wolcott, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., CAREY, J., and BROWN, Vice Chancellor.

HERRMANN, Chief Justice:

The defendant, James Garner, seeks review of his conviction for robbery. The question presented is whether the State may avoid revealing the substance of an informant's tip upon the basis of which an arrest was made, there being no other basis for a finding of probable cause for the arrest.

### I.

The victim was robbed by a man wearing a stocking mask. Although unaware of the robber's identity, the victim was able to identify William E. Smith, the other defendant in the case, as being present at the scene of the robbery. A search for Smith was begun.

A few days later, a police officer received a tip from an unidentified informant that Garner was the masked robber and that Garner and Smith would be at a certain street corner at a particular time. The informant described the car and the route the men would be taking. Pursuant to that tip, the men were apprehended. At a line-up, the victim identified Garner as the robber. At trial, the arresting officer testified to the above facts and the informant's known reliability, but refused to testify as to what facts were related to him by the informant which would support the allegation that Garner was the robber. The police officer stated, as his reason for declining so to testify, that he was obliged to protect the identity of the informant; that revelation of the substance of the tip would, *ipso facto*, disclose the identity of the informant.

The victim made an in-court identification of Garner, but it was based solely upon the line-up identification. From his conviction, Garner appeals.

### II.

We agree with the defendant that probable cause for his arrest was not shown. When measured against constitutional standards, there was insufficient corroboration of the informant's statements that the defendant was involved in the crime. Specifically, there was no showing as to how the informant acquired his information; nor was there a showing, with constitutional sufficiency, of the basis for believing that the information was reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The law requires for all valid arrests, with or without warrants, that police officers possess information which would warrant a reasonable man in believing that a crime had been committed. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of whether such probable cause exists is essentially a balancing test wherein the necessities of effective law enforcement are measured

against the constitutional rights of citizens to be protected against arbitrary police action. Brinegar v. United States, *supra* (69 S.Ct. at 1311).

■■■ Probable cause can be established from either direct observation or hearsay. The latter, consisting generally of incriminatory reports to the police by informants or witnesses, is acceptable, provided that it is sufficiently corroborated by other facts within the officer's knowledge. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). While the use of informants in the fight against crime has become a pragmatic imperative of modern law enforcement, the use of such information is circumscribed by the Fourth Amendment to the extent that it must be reliable. The problem is one of gauging the quantum of evidence necessary to support such reliability.

■■■ To measure something as elusive of concrete definition as "reliability" is, of course, a difficult task; the boundaries of the term cannot be drawn with any great degree of precision. It is certain, however, that a bare statement of the belief of a police officer, as to the reliability of an unnamed informant and the truthfulness of his statements, is not sufficient basis for a judicial accreditation of the report of such informant as "reliable" within the constitutional guaranty. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Similarly, a bare statement that the information came from a "creditable source" is insufficient. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). Generally, an informant's information, though not necessarily his identity, must be divulged in the estab-

lishment of probable cause. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). This is essential to the tests of relevancy and reliability by the trial court and to the review of those essentials by an appellate court.* Without divulgence of the content of the informant's information, this Court is unable to make those assessments.

■■■ The State contends that, notwithstanding the refusal of the police officer to disclose the informant's message as to the crime, there is sufficient corroborative evidence to satisfy the requirements of the law as to reliability. The State argues that because the informant was right about disclosed fact A (that Garner would be at the designated street corner at the stated time), and also about disclosed fact B (the route to be taken), that he must be reliable about the undisclosed facts C (complicity of Garner with Smith in the robbery). Mr. Justice White discussed this faulty reasoning in *Spinelli*: (89 S.Ct. at 594)

> " * * * [N]or would it suffice, I suppose, if a reliable informant states that there is gambling equipment in Apartment 607 and then proceeds to describe in detail Apartment 201, a description which is verified before applying for the warrant. He was right about 201, but that hardly makes him more believable about the equipment in 607."

Although accurate, the information disclosed related only to innocent activity. Without more as corroboration, other than the assertion that the informant had given reliable tips in the past, the information disclosed is in a vacuum without probative value. The law is clear that corroboration must be bottomed on the character of the information, not on accuracy alone. Har-

---

* There are numerous supportive indicia which may be present in conjunction with these essentials to constitute adequate corroborative evidence. While there can be no precise formula as to what combination qualitatively

will serve as sufficient corroboration, *Harris* cites Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) as a suitable benchmark.

ris v. United States, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); see also Marvel v. State, Del. Supr., 290 A.2d 641 (1972).

Reliance by the State on Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959) is misplaced. The corroboration there was clearly sufficient: The informant in that case, a special employee of a narcotic agent, had given reliable information about narcotics offenders on numerous prior occasions. On this occasion, he related that the defendant would be going on a trip to buy drugs and would be returning in a few days. As corroboration he described the mode of transportation, date of arrival, physical characteristics, dress and accessories, and stated that the defendant would be carrying heroin in a special type of valise. The information proved completely accurate and was held to show probable cause for arrest. The inadequacies of the disclosed information in the instant case become obvious when compared to *Draper*.

When reduced to its basics, the instant case resembles Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), where the Court reversed a conviction for lack of sufficient corroboration of hearsay information. In summing up the State's case, the Court said:

"Beyond that, the arresting officer who testified said no more than someone (he did not say who) had told him something (he did not say what) about the petitioner."

Such is the State's case here; it must fall for the reasons stated in *Beck*.

■ We conclude that the State has failed to demonstrate probable cause for the defendant's arrest. The arrest, there-

fore, was illegal. Since the line-up identification of the defendant was the direct result of the illegal arrest, that identification is unlawful "fruit of the poisonous tree". Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). And since the in-court identification was based solely upon the line-up identification, the evil permeates the conviction itself. Accordingly, there must be a reversal.

It is regrettable, of course, if the State's case is fatally handicapped by the police officer's view that to testify as to the information given him would be to violate his obligation to conceal the identity of his informant. The defendant's constitutional rights must prevail, of course, in the disposition of that prosecution problem.

Reversed and remanded for further proceedings consistent herewith.

## UPON PETITION FOR REARGUMENT

HERRMANN, Chief Justice (for the majority of the Court):

The State petitioned for reargument on the ground that there was a pre-trial suppression hearing which had not been transcribed and which had not been included in the record of the case brought before us upon this appeal. The State asserts that the transcript provides additional facts establishing probable cause for arrest which were not brought to the attention of this Court "through inadvertence or mistake" of the parties. Reargument was granted upon that basis, reluctantly.

It is questionable whether the newly offered transcript should be allowed to become part of the record on this appeal.[1]

---

1. It appears from the additional transcript now furnished us that an earlier trial of this case resulted in a mistrial and dismissal of the jury. Immediately thereafter, preparatory to a new trial, the Judge held a suppression hearing on the issue of probable cause for arrest. That hearing resulted in a finding of probable cause. The State's petition for reargument is based upon the evidence adduced at that hearing.

Assuming, *arguendo*, however, that the suppression hearing record is now properly before this Court, we find that the evidence contained therein does not cure the constitutional deficiency in the State's case.

Before the belated proffer of the suppression transcript, the State's evidence regarding reliability and corroboration consisted of the following: (a) an unsupported statement by the police that the informant was reliable; (b) a statement from the informant that Garner would be with Smith, a fugitive, at a certain time and place; and (c) a statement that they would be driving a specifically described car on a certain route.

To this evidence, which we held to be insufficient corroboration to establish probable cause, the State now adds the following from the pre-trial suppression hearing which it claims have a curative effect: (a) instead of bare allegations of reliability, the officer testified that the informant actually gave reliable information to the police several times in the past; (b) the informant told the officer that he had "direct personal contact"[2] with the defendants and thus had gained first-hand information about the defendant's participation in the robbery; and (c) a conversation between the defendant and his co-defendant, relayed to the officer through the informant, contained, in the opinion of the police officer, an admission of guilt or "would amount to a confession" by the defendant who uttered it.[3]

The infirmity inherent in the State's original case is still present: there is constitutionally insufficient corroboration of the informant's statements to the police. A number of reasons influence this decision.

█ Past instances of reliability are inconclusive without additional independent corroboration of the information actually given. Probable cause is not established solely by allegations of past reliabilty; something more is needed.

█ The suppression hearing transcript offers no more independent corroboration than did the original record. Without revelation as to exactly what was said by the informant to the police officer, we have only the officer's assumptions and conclusions. Without such revelation, we are unable to pass judgment as to whether the officer had reasonable grounds to believe that probable cause for arrest existed. We may not accept a police officer's conclusion that probable cause for arrest exists without opportunity to examine in detail the grounds upon the basis of which he reached that conclusion.

█ There are additional deficiencies: There is no explanation either of the nature of the informant's involvement with the defendants or of his proximity to the conversation the informant stated he overheard. There is disclosed none of the underlying circumstances that Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.

---

The new trial, however, was presided over by another Judge. The new Trial Judge knew of the prior suppression hearing and its result, although it had not then been transcribed; but the Trial Judge chose to disregard that hearing and its result and entered into a "separate, new voir dire" on the same issue of probable cause for the arrest. A full hearing, in the absence of the jury, was held by the Trial Judge on that issue. It is the evidence adduced at that hearing which we have heretofore reviewed and found wanting.

It is manifest that the new Trial Judge discarded the prior hearing on probable cause, superseded it with a new hearing of his own, and arrived at an independent conclusion. The prior hearing and evidence produced thereat were not before the Trial Judge as part of the record of this cause; thus it is questionable whether the prior hearing and evidence adduced thereat are properly before this Court upon review of that record.

2. "Direct personal contact", the State explains, means that the informant stated he was within sight and sound of a conversation between the defendant and a co-defendant concerning the robbery in question.

3. It is not clear whether the defendant or his co-defendant made the admission.

Ed.2d 723 (1964) requires. Without such explanation, the "direct personal contact" element exists in a vacuum.

Further, we find no evidence that the officer knew anything about Garner's reputation or activities which would relate to this or similar criminal conduct. Thus, in this respect, the State's reliance on United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) is misplaced.

■ The State misconstrues *Harris* by contending that an alleged declaration against penal interest by one of the defendants, relayed through the informant, constitutes corroborative evidence. *Harris* plainly limits this type of corroborative evidence to statements against penal interests by the informant himself. While common sense would "induce a prudent and disinterested observer to credit these statements" by the informant, statements against penal interest attributed to a third party by the informant do not carry their own indicia of reliability. United States v. Harris, 403 U.S. at 583–584, 91 S.Ct. at 2082.

If the evidence in question were presented to a magistrate, it would be insufficient, in our opinion, to support a request for an arrest warrant under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). If then, as Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964) indicates,[4] arrests with warrants are often upheld on a lesser quantum of evidence than are warrantless arrests, *a fortiori*, the State's case must fail here.

Accordingly, we adhere to the conclusion that probable cause for arrest did not exist here.

BROWN, Vice Chancellor (Concurring) :

I concur with the majority in the decision reached on reargument, but I do so for a different reason. As noted in the first footnote to the foregoing opinion upon the petition for reargument, the trial judge elected not to be bound by the ruling of the judge who presided at the initial suppression hearing, but proceeded, over the objection of the State, to conduct his own hearing out of the presence of the jury on the issue of whether or not there was probable cause to sustain the arrest. The same police officer again offered the only testimony on this issue, and as a result the trial judge made his own finding of probable cause. His action in conducting his own hearing is perhaps understandable since he did not have the transcript of the first hearing available to him at the time. Presumably, as trial judge and being confronted with having to make an instant decision he chose to assume responsibility for all aspects of the case rather than to rely on the pretrial decision of a fellow judge based on facts and testimony not before him for examination. Whatever the reason, however, and regardless of the merit of such action, the fact remains that, in my opinion, the trial judge elected not to be bound by the prior finding of probable cause.

As a general rule, the pretrial ruling of one judge ordinarily becomes the law of the case in that court, and one judge of a court should not ordinarily review or disturb the rulings of another judge of the same court in the same case. However, although the judge before whom the later proceedings are had may adopt the ruling or decision of his predecessor in the case, he is not absolutely bound to follow it. 21

4. "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. 'Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent than where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained.'" Beck v. Ohio, 379 U.S. at 96, 85 S.Ct. at 228, quoting Wong Sun v. United States, 371 U.S. at 479–480, 83 S.Ct. at 407 (1963).

C.J.S. Courts § 195, p. 340; 132 A.L.R. 52, 68; Hall, et al. Modern Criminal Procedures 681–683.

It seems clear to me from the record that the trial judge adopted this latter alternative, and thereby removed the evidence of the first hearing from the consideration of this Court on appeal. In the absence of later discovered evidence or other circumstances warranting a new hearing, I feel that there should be one ruling on the issue of probable cause for purposes of an appeal, not two. For instance, where would we be if we were to find sufficient evidence to show probable cause at the first hearing, but not at the second?

I therefore do not consider it necessary to review the decision of the judge who presided at the first hearing. I feel that the decision of the trial judge resulting from the second hearing is the one which must pass muster on appeal. Since I have previously agreed that his finding of probable cause was not supported by the evidence. I must still cast my lot for reversal of the conviction for the reasons set forth in the original opinion of this Court.