IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | ID No. 1706015581 |
| v. | ) | In and for Kent County |
| | ) | |
| RODNEY MORRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

Submitted: November 29, 2017
Decided: December 19, 2017

*Upon Defendant's Motion to Suppress*
**DENIED**

Dennis Kelleher, Esquire, Department of Justice, Dover, Delaware for the State of Delaware.

Alexander W. Funk, Esquire, Curley, Dodge and Funk, Dover, Delaware for Defendant.

Primos, J.

Before the Court is the motion to suppress filed by Defendant Rodney Morris (hereinafter "Defendant"), challenging the search of his home located at 322 Cecil Street (hereinafter the "Residence") pursuant to warrant. The Court has considered this motion and the State's responses, as well as oral arguments by counsel on November 29, 2017, and for the reasons set forth below, Defendant's motion is **DENIED**.

## I. FACTUAL BACKGROUND

The relevant facts are taken from the affidavit of probable cause attached to the search warrant (hereinafter the "Warrant"). The affiants are Officer Joshua Boesenberg and Detective Jordan Miller of the Dover Police Department.

In December of 2016, Private First Class James Johnson of the Dover Police Department (hereinafter "Officer Johnson") was contacted by a past proven reliable confidential informant (hereinafter the "CI"). The CI informed Officer Johnson that Defendant, whom the CI knew by the alias "Dreds," was selling crack cocaine from his bicycle in Dover, Delaware, and was currently living in the area of Cecil Street.

On June 20, 2017, Officers Johnson and Barrett observed Defendant leave the Residence on a bicycle. The officers followed him and saw him participate in a hand to hand transaction with a man later identified as Mahdi Wilson (hereinafter "Mr. Wilson") on Mary Street in Dover, Delaware. Surveillance of Defendant by law enforcement showed that Defendant returned to the Residence shortly after the hand to hand transaction. Mr. Wilson left the scene of the transaction in a Kia minivan and was tailed by the officers, who pulled him over for a traffic stop. When stopped, Mr. Wilson fled. He was pursued, taken into custody, and found in possession of crack cocaine.

In his motion to suppress, Defendant argues that the allegations recited in the warrant affidavit are insufficient to constitute probable cause because the affidavit contains "(1) stale, outdated and irrelevant information provided by a 'confidential source,' that is not probative of evidence of criminal activity being found at [Defendant's] residence; and (2) conclusory hearsay allegations of purported criminal activity that occurred wholly outside of the residence and are not probative of evidence of illegal activity being found in [Defendant's] residence."[1]

## II. STANDARD OF REVIEW

On a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful.[2] A search warrant may not issue unless there is a showing of a factual basis for probable cause within the "four corners" of the affidavit that was submitted to the magistrate in the officer's application for the warrant.[3]

When considering the affidavit, the magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4] For a warrant to evidence probable cause to search a home, "a nexus between the items to be sought and the place to be searched"

---

[1] Amended Motion to Suppress Evidence at ¶ 31.

[2] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006).

[3] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975).

[4] *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). *See also Aguilar v. State of Texas*, 378 U.S. 108, 114 (1964).

must be established.[5] Put another way, law enforcement must also have "probable cause to believe that evidence of such crime can be found *at the residence.*"[6]

A magistrate's determination of probable cause "should be paid great deference by reviewing courts" and should not "take the form of a *de novo* review."[7] Nonetheless, the highest courts of both the United States and Delaware have instructed that the people's privacy interests in their homes are afforded special protection,[8] and this Court may not permit the requirement that the affidavit show an adequate fact-based connection between illegal activity and an arrestee's home to go unenforced.[9] However, in considering "whether the warrant application presented the issuing magistrate with a 'substantial basis' to conclude that probable cause existed," this Court "eschews 'a hypertechnical approach to the evaluation of the search warrant affidavit in favor of a common-sense interpretation.'"[10]

## III. DISCUSSION

Defendant relies upon four primary grounds to attack the validity of the Warrant: (1) the affidavit's reliance upon hearsay information rather than the personal observations of the affiants; (2) the affidavit's reliance upon allegedly stale and irrelevant information from the CI; (3) the affidavit's alleged failure to show the presence of criminal activity based upon an observed hand-to-hand transaction, Mr.

---

[5] *Morgan v. State*, 962 A.2d 248, 253 (Del. 2008).

[6] *Cannon*, 2007 WL 1849022, at *4 (emphasis added). *See also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (requiring a showing of "a fair probability that contraband or evidence of a crime will be found in a particular place").

[7] *Gates,* 462 U.S. at 238–39.

[8] *Payton v. New York*, 445 U.S. 573, 585 (1980); *Mason v. State,* 534 A.2d 242, 246-49 (Del. 1987).

[9] *Cannon*, 2007 WL 1849022, at *4.

[10] *Id.* at *3 (quoting *Gardner v. State,* 567 A.2d 404, 409 (Del.1989)).

Wilson's subsequent flight from law enforcement, and the discovery of crack cocaine on Mr. Wilson's person; and (4) the alleged absence from the affidavit of any nexus between the alleged criminal activity and the Residence. The Court, after considering each of these arguments in turn, has concluded that the affidavit does establish probable cause justifying the issuance of the search warrant.

## A. Affidavit's Reliance Upon Hearsay

Defendant argues that the affidavit in support of probable cause is deficient because it relies solely upon hearsay observations of the alleged criminal activity and its connections to the residence. In fact, no direct observations reported in the affidavit were made by the affiants. This, however, does not automatically invalidate the Warrant.

An affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented."[11] In warrant contexts, probable cause may be "founded on hearsay information provided to the affiant by other officers . . . . [A]n officer-informant relaying the information to the affiant will be considered a reliable source for the information needed to determine probable cause."[12] The United States Supreme Court has similarly held that hearsay observations of a warrant applicant's qualified fellow officers are "plainly a reliable basis" on which a magistrate may rely in determining probable cause.[13]

---

[11] *Jones v. United States,* 362 U.S. 257, 269 (1960).
[12] *Hooks v. State,* 416 A.2d 189, 202–03 (Del. 1980).
[13] *United States v. Ventresca,* 380 U.S. 102, 111 (1965).

The United States Court of Appeals for the Eighth Circuit, in *Gallagher v. United States*, considered whether an affidavit composed entirely of hearsay is deficient, and reached its conclusion for reasons this Court finds persuasive:

> At this point in the development of jurisprudence interpreting the Fourth Amendment, a claim that a search warrant is invalid because it is based entirely on hearsay is frivolous . . . . Particularly is this true in the now complex field of criminal investigation . . . . Unless authorities do act quickly upon an evaluation of reports received by them, the fruits of the crime and the trail of the offenders could easily be irretrievably lost.[14]

The collective knowledge doctrine also suggests that the personal knowledge of the affiant is irrelevant when the source of the hearsay was another officer. Pursuant to this doctrine, the knowledge of other investigating officers is imputed to the affiant.[15] The Supreme Court of Delaware indicated in *State v. Cooley* that when officers have been in communication with one another, "the collective knowledge of an entire organization may be imputed to an individual officer."[16] Similarly, the United States Court of Appeals for the Third Circuit, along with other jurisdictions, has indicated that probable cause is to be evaluated on the basis of the collective information of the police.[17] While the collective knowledge doctrine only applies when the officers have been in communication, the Court can infer communication

---

[14] *Gallagher v. United States*, 406 F.2d 102, 107 (8th Cir. 1969).

[15] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006).

[16] *State v. Cooley*, 457 A.2d 352, 355 (Del. 1983) (quoting *State v. Schoenbneelt*, 171 Conn. 119, 368 A.2d 117, 119 (Conn. Supr. 1976)).

[17] *United States v. Bianco*, 189 F.2d 716, 719 (3d Cir. 1951). *See also State v. Smith*, 277 A.2d 481, 489 (Me. 1971); *State v. Fioravanti*, 215 A.2d 16, 23 (N.J. 1965) ("[p]robable cause must be judged on the basis of [the] composite information" in possession of the police).

in this case between the hearsay declarant officers and the affiants, as the declarant officers' specific observations are contained in the affidavit prepared by the affiants.

In arguing that the affidavit's reliance upon hearsay renders the Warrant invalid, Defendant cites to three Delaware decisions, none of which were decided in the context of a search warrant, and all of which involved warrantless arrests: *Garner v. State,*[18] *State v. Holmes,*[19] and *State v. Hopkins.*[20]

In *Garner*, police were investigating a robbery where the suspect was a masked robber. An officer received "a tip from an unidentified informant that the defendant was the masked robber." The tip provided information about the defendant's whereabouts and allowed officers to apprehend the defendant.[21] "At trial, the arresting officer testified to the above facts and the informant's known reliability, *but refused to testify as to what facts were related to him by the informant which would support the allegation that [the defendant] was the robber.*"[22] The *Garner* court found that this uncorroborated testimony was insufficient to demonstrate probable cause to arrest the defendant.

In *Holmes*, a defendant was arrested during a traffic stop, and the defendant moved to suppress evidence discovered after a search of his vehicle.[23] The officer testifying at the suppression hearing had limited knowledge of what had happened at

---

[18] 314 A.2d 908 (Del. 1973).
[19] 2015 WL 5168374 (Del. Super. Sep. 3, 2015).
[20] 2016 WL 6958697 (Del. Super. Nov. 23, 2016).
[21] *Garner*, 314 A.2d at 910.
[22] *Id.* (emphasis added).
[23] *Holmes*, 2016 WL 6958697 at *1–3.

the traffic stop. When pressed for details as to what the officers conducting the stop had done and said, the testifying officer "was not familiar with any of the arresting officers' reports and . . . the Court could not ascertain what the arresting officers said, how the occupants responded, or what those officers were thinking."[24] The *Holmes* court found that the testifying officer lacked material details regarding what had happened, and the Court was left only with "assumptions and conclusions."[25] The court determined that *"under the circumstances of this case,* [the State's] burden cannot be predicated entirely on hearsay."[26]

In *Hopkins*, a defendant moved to suppress evidence discovered during the search of his person.[27] The State's only justification for the search was consent.[28] The testifying officer at the suppression hearing had not been present at the scene when the defendant had allegedly given consent.[29] The testifying officer informed the Court that he had been told only that the defendant had consented and did "not testify regarding how [the defendant] was asked to consent, the degree to which he initially cooperated with the police, or any other factor enabling the Court to determine whether [the defendant's] will was overborne, and that it was not the product of duress or coercion, express or implied."[30] The *Hopkins* court concluded that probable cause could not be established based on this testimony alone.[31]

---

[24] *Id.* at *9.

[25] *Id.*

[26] *Id.* (emphasis added).

[27] *Hopkins*, 2015 WL 5168374 at *2.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

The facts in *Garner* are distinguishable from the instant case in three ways: first, *Garner* was analyzing a warrantless arrest; second the hearsay originated from an unidentified informant; and third, the proffered hearsay in *Garner* constituted mere conclusions rather than observations. Here, probable cause was found by a magistrate considering a warrant application, who requires a somewhat lesser quantum of evidence demonstrating reliability than does an officer making a warrantless search or arrest.[32] Second, the hearsay observations in this case were made by police officers, whose observations are "plainly reliable."[33] Third, and most critically, the affiants here reported the content of the hearsay observations, not merely conclusions based on those observations.

Similarly, Defendant's reliance on the *Holmes* and *Hopkins* decisions is misplaced. In each, the testifying officer lacked key details as to the factual basis for probable cause, offering mere conclusions and assumptions. The holdings in those cases do not control cases like the one before this Court, where a warrant affiant provides substantial detail as to the observations of investigating officers and the factual bases for a finding of probable cause. Another key factor distinguishing these decisions, as noted above, is that they invalidated warrantless arrests rather than search warrants. As the *Holmes* court observed, one of the primary issues in that case was "whether *the State's burden* in a motion to suppress can be met solely by hearsay."[34] In this case, by contrast, Defendant bears the burden.

---

[32] *Id.* at 914.

[33] *Ventresca*, 380 U.S. at 111.

[34] *State v. Holmes*, 2015 WL 5168374 at *1 (Del. Super. Sep. 3, 2015) (emphasis added).

Defendant appears to recommend a requirement that the affiant possess some quantum of corroborative first-hand knowledge. The Court declines to accept this recommendation. Such a requirement would needlessly invalidate warrants that, upon a common-sense reading, establish a fair probability that contraband or evidence will be found in a particular location. Rather, this Court follows the well-established "totality of the circumstances" analysis, cognizant of the policy preference for a "flexible, easily applied standard" expressed by the United States Supreme Court in *Illinois v. Gates*.[35]

Here, the Court does not find that the affidavit's reliance on hearsay renders it defective. An affidavit of probable cause may rely solely on hearsay, so long as the sources of the hearsay are the affiant's fellow officers and the hearsay allegations are not conclusory. The Court does not opine on whether hearsay alone would support probable cause if the hearsay had some other source. That question is not before the Court.[36]

## B. Tip from Confidential Informant

The Court now turns to the next factor that, according to Defendant, demonstrates the invalidity of the warrant, the alleged staleness and unreliability of the tip from the confidential informant.

---

[35] 462 U.S. 213, 238–39 (1983).

[36] The affidavit also contains hearsay information from fellow law enforcement officers regarding Johnmikah Daniels, who allegedly engaged in drug activity in the Dover area, parked her vehicle in front of the Residence, and lived at the Residence. In the Court's view, this information provides no basis for probable cause to search the residence, but by the same token, does not render the Warrant invalid, as there are other bases in the affidavit for the probable cause finding. The same analysis applies to the information in the affidavit that Defendant and Ms. Daniels were arrested at the Residence over a year before the instant case, and were charged with drug dealing. Such information, while irrelevant, is not fatal to the affidavit's validity.

A tip may be supportive of probable cause when the totality of the circumstances demonstrate reliability.[37] Relevant considerations include whether the tip has been shown to be reliable or trustworthy through its specificity, corroboration with other facts within the officer's knowledge, or accurate predictions of a suspect's future behavior.[38] When staleness is alleged, "the test of temporal proximity is determined on an *ad hoc* basis in the light of circumstances of each case."[39] Probable cause must be based on current information.[40]

Here, the affidavit informed the magistrate that Officer Johnson had received a tip that Defendant lived on Cecil Street and sold crack cocaine from his bicycle in Dover. The CI did not allege any connection between the Residence and illegal drugs, except that Defendant was alleged to be a drug dealer, and that he lived at the Residence.

The State has indicated that the informant was previously proven reliable. The tip's content was largely generic, alleging merely the sale of crack cocaine from a bicycle, with no particulars as to when sales were made, who they were made to, or where they were transacted, except in Dover, generally.[41]

---

[37] *Id.* at 230.

[38] *Jones v. State*, 745 A.2d 856, 870 (Del. 1999) (stating relevant considerations for finding of reasonable suspicion: "(1) the specificity of the anonymous tip; (2) independent police corroboration of the facts underlying the tip; and (3) the ability of the tipster to predict future behavior by the suspect.").

[39] *Gardner v. State*, 567 A.2d 404, 410 (Del. 1989) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[40] *E.g., Sisson v. State*, 903 A.2d 288, 297 (Del. 2006); *Gardner*, 567 A.2d at 410.

[41] Compare the tip received here with the more detailed tip received in *Illinois v. Gates*, 462 U.S. at 245–46.

Subsequent investigation did appear to corroborate the tip's few details. The CI advised that Defendant used a bicycle when conducting transactions, and the observations made by the officers were consistent with this. The CI also predicted with accuracy that crack cocaine was the drug being trafficked. Moreover, while the tip was provided six months before the incident in question, the Court finds that this time gap is not so great as to render the information stale with regard to whether the officers were observing criminal activity when they viewed the hand-to-hand transaction.

While it seems a close case as to whether the tip is supportive of probable cause to search Defendant's person, it certainly provides no probable cause to search the Residence. The tip does not mention any connection between the Residence and illegal activity, but simply states that Defendant "sells Crack Cocaine from his Bicycle in the Dover Delaware area."

The tip alone could not provide probable cause for the search of the Residence. However, it did provide additional information upon which the magistrate could base his conclusion that the Defendant participated in criminal activity after leaving the Residence and before returning there.

## C. Suspected Criminal Activity

Turning to Defendant's third primary argument, Defendant contends that the following facts—the observed hand-to-hand transaction, Mr. Wilson's subsequent flight, and the discovery of crack cocaine on Mr. Wilson—were insufficient to allow the magistrate to determine that Defendant had been involved in criminal activity. The Court concludes otherwise. The affidavit indicates that Defendant left the Residence, got on a bike, and traveled to the area of Mary Street, where he engaged

in a hand to hand transaction with Mr. Wilson. To be sure, this was not a controlled buy, and law enforcement did not determine with certainty that Mr. Wilson obtained the crack cocaine in his possession from Defendant.

Nonetheless, while a controlled buy may be the typical method for determining probable cause in a case such as this, "a template of 'typical' facts is not the *sine qua non* for a finding of probable cause."[42] Probable cause was found by this Court on similar facts in *State v. Watson*.[43] In *Watson*, officers observed a defendant participate in what appeared to be a hand-to hand drug transaction with a driver of a Buick.[44] After the transaction, law enforcement pulled over the driver of the Buick and found marijuana and cash in the vehicle, providing probable cause to believe contraband or evidence of criminal activity would be found in Defendant's vehicle.[45] Here, the hand-to-hand transaction combined with Mr. Wilson's subsequent flight, and the discovery of contraband on his person, provides a substantial basis to believe that an illegality, namely, a drug transaction, had occurred between himself and Defendant.[46] As indicated previously, this conclusion is also supported by the CI's tip which, although independently unsupportive of probable cause, renders it more likely that Defendant sold crack cocaine to Mr. Wilson during their hand-to-hand transaction.

---

[42] *State v. Holden*, 60 A.3d 1110, 1116 (Del. 2013).

[43] 2015 WL 2210343 (Del. Super. May 8, 2015).

[44] *Id.* at *1.

[45] *Id.* at *4.

[46] *Id.* (holding that magistrate had substantial basis for finding probable cause where police found "oxycodone without a prescription on a person who made a brief visit to the house and then dissembled about the location he had just left").

Defendant has also argued both in writing and in open court, that the fact that the affidavit did not specifically allege that the transaction was an "illegal" or "drug" transaction somehow renders the allegation meaningless as a matter of probable cause. The Court declines to take such a "hypertechnical" approach. Rather, it was appropriate for the magistrate to take *all* the circumstances in the affidavit into account, notwithstanding the absence of a single word or phrase.

### D. Nexus Between Criminal Activity and Residence

Defendant's final argument is that there is no nexus between the alleged criminal activity and the Residence. The Court finds the opposite. Defendant's direct travel between the Residence and the site of the transaction constitutes a sufficient connection. This is evidenced by this Court's decision in *State v. Cannon*, where the Court stated that "[d]irect or indirect evidence that a defendant traveled immediately to his home after engaging in illegal activity might be sufficient to establish probable cause that evidence or contraband are located in the residence."[47] In this case, law enforcement watched Defendant travel from his house to the site of the transaction and also noted that he returned to the Residence shortly after the transaction. In light of this evidence, law enforcement had probable cause to believe that contraband was located in the Residence. This conclusion is additionally supported by the affiants' assertion that, based on their knowledge, training, and experience, persons involved in drug trafficking will hide certain contraband in their houses.[48]

---

[47] *State v. Cannon*, 2007 WL 1849022 at *6 (Del. Super. June 27, 2007). *See also State v. Church*, 2002 WL 31840887 at *6 (Del. Super. Dec. 18, 2002) (probable cause found where defendant left residence in question and participated in probable drug transaction).

[48] *Cannon*, 2007 WL 1849022 at *4 ("The nexus need not be based on direct observation or facts placing evidence at the location to be searched and may be inferred from the factual circumstances, including 'the type of crime, the nature of the items sought, the extent of an

## CONCLUSION

Given this Court's deferential review of a magistrate's decision to issue a search warrant, and the consideration of that decision in light of common sense, the Court concludes that it cannot overturn the magistrate's decision in this case. The affiants' reliance upon hearsay information provided by fellow officers was appropriate, particularly since the information was both detailed and consistent with information regarding prior criminal activity provided by a past proven reliable informant. Prohibiting search warrant affiants from relying upon credible and specific information provided by fellow law enforcement officers would be "impractical and border on the absurd"[49] and would inhibit efficient law enforcement. Furthermore, while the CI's tip did not itself provide probable cause to search the Residence, it indicated that criminal activity was afoot. Finally, the magistrate made a common sense conclusion that the transaction and subsequent law enforcement interaction with Mr. Wilson supported a conclusion that criminal activity had occurred, and that there was a nexus between that activity and the Residence due to Defendant's contact with the Residence both before and after the transaction.

**WHEREFORE**, for the foregoing reasons, Defendant's motion to suppress is **DENIED.**

---

opportunity for concealment and normal inferences' regarding where a criminal might hide evidence.") (quoting *State v. Ivins,* 2004 WL 1172351, at *4 (Del. Super. May 21, 2004)).
[49] *State v. Smith*, 277 A.2d 481, 489 (Me. 1971).

**IT IS SO ORDERED.**

<u>/s/ Noel Eason Primos</u>
Judge

NEP/dsc