# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                                 )

v.                )  ID No. 2211005299
                                 )

ROBERT W. GILLEN,     )
    Defendant.           )

## MEMORANDUM OPINION

Date Submitted:  September 1, 2023
Date Decided:  October 10, 2023

## *On Defendant's Motion to Suppress - DENIED*

James Betts, Esquire, Department of Justice, Attorney for the State of Delaware

James M. Stiller, Esquire, Attorney for the Defendant

**BRENNAN, J.**

Robert Gillen ("Defendant") was arrested for Driving Under the Influence ("DUI") and related charges following a November 13, 2022, encounter with the Delaware State Police. Trooper Brooks responded to a call of shots fired in the area of Fox Run Shopping Center around 1:37 a.m. Upon arrival, he located a silver Volkswagen GTI exhibiting a loud muffler, which was being used in a way to sound like gunfire. Upon conducting a vehicle stop, Defendant was found to be the sole operator of the Volkswagen and was exhibiting signs of impairment. Following an investigation, Defendant was arrested and ultimately indicted[1] with Driving Under the Influence of Alcohol, ("DUI")[2] Failure to Provide Proof of Insurance[3] and Improper Muffler.[4]

Defendant filed a timely motion to suppress, challenging that: 1) there was not reasonable, articulable suspicion to conduct a DUI investigation; 2) there was not probable cause contained in the search warrant for his blood; and 3) the State cannot establish chain of custody for the blood draw due to some missing information on the blood draw documentation.[5] A hearing was held on September 1, 2023, at which time testimony was given by Trooper Brooks. Both the State and Defendant introduced exhibits, one such exhibit was the Body Worn Camera

---

[1] *State v. Robert Gillen*, Cr. A. No. 2211005299, D.I. 1
[2] 21 *Del. C.* § 4177.
[3] 21 *Del. C.* § 2118(p).
[4] 21 *Del. C.* § 4311.
[5] D.I. 16.

("BWC") of Trooper Brooks and the challenged blood draw documents. At the conclusion of the hearing, the Court ruled that the State provided sufficient proof of chain of custody with respect to the blood draw documents in support of the blood alcohol result. The Court took the remaining issues under advisement. For the reasons stated below, the motion to suppress is **DENIED**.

## I. FACTUAL BACKGROUND.[6]

Defendant was stopped following an investigation into a shots fired complaint. Trooper Brooks responded to this call for service[7] and came upon a Volkswagen whose muffler was loud and emitting the occasional bang, a sound which was consistent with gunfire. Trooper Brooks moved behind this vehicle and himself heard noises that he identified as a muffler, but consistent with the sound of gunshots. After being behind this Volkswagen for a few minutes, and after hearing this sound repeatedly, Trooper Brooks initiated a traffic stop and pulled over the

---

[6] The majority of the facts are learned from the BWC of Trooper Brooks, State's Exhibit 1, coupled with his Testimony presented at the hearing.

[7] Trooper Brooks testified that he was with a Field Training Officer ("FTO") at the time of this stop, as he had recently graduated from the Delaware State Police Academy and was within the first six months of graduation at the time of this stop. As a result, his FTO, Cpl. Fischetti, was with him throughout the investigation and appears on the BWC. Multiple other unidentified Troopers were on scene according to the BWC, presumably due to the call for shots fired, however, that testimony was not elicited by either side in the hearing. Nor were any issues raised with respect to the actions of any other Trooper on scene.

Volkswagen. The Volkswagen's rear windshield was shattered completely, yet still intact for the most part. Defendant was identified as the sole occupant and driver.[8]

Trooper Brooks approached the passenger side of the Volkswagen and engaged in an initial conversation with Defendant. Defendant was informed he was being stopped for his loud muffler and was asked the reason for it being so loud. With a chuckle, Defendant acknowledged the volume and said, "Yeah, I'm sorry" and "I was being dumb." Defendant was actively smoking a cigarette upon contact, but despite the smell of cigarette smoke and being on the passenger side of the vehicle, Trooper Brooks was able to detect a faint odor of alcoholic beverages.[9] Trooper Brooks found Defendant's speech to be slurred. The BWC of Trooper Brooks shows that on numerous occasions, Defendants speech was so slurred that his comments were unintelligible and he was asked to repeat himself. When asked from where he was coming, Defendant's first response was unknown, as it was so slurred it could not be made out. Thus, Defendant was asked to repeat himself and proceeded to give evasive answers such as: "A buddy's of mines [sic] house," "back there" and "a neighborhood." When asked if he was in the shopping center parking lot where the shots fired call originated, Defendant stated, "I'm not going to lie, yeah I was."

---

[8]    Sept. 1, 2023, Supr. Hr'g Tr. at pp. 9-11.
[9]    Supr. Hr'g Tr. pp. 12-13.

Further questioning ensued regarding Defendant's activities prior to the stop. Trooper Brooks initially asked Defendant if he had been watching football at his friend's house and Defendant agreed he was. After a moment of apparent confusion, Defendant said he does not watch football and denied drinking anything when asked. Once again, Defendant gave an unintelligible response when asked for the vehicle's insurance. He was asked to repeat himself and informed Trooper Brooks that the Volkswagen was not his vehicle. And just before he was asked to step out of the car, unsolicited, Defendant stated, "I just like to pop it, I'm sorry."[10]

Once outside the vehicle, Trooper Brooks noticed the odor of alcoholic beverages coming from Defendant's breath was "a lot stronger."[11] Multiple Troopers were on the scene by the time Defendant got out of the Volkswagen and Defendant was placed in handcuffs and questioned again about his drinking. An additional Trooper is seen and heard on the recording asking Defendant if he had anything further to drink because he was having trouble standing, noting his slurred speech and commented that his eyes were glassy. When asked, Defendant stated his ex-girlfriend broke the back windshield of the car, said it was "a long story." When questioned about how long he had been driving his friend's car, he said "two days."[12]

---

[10]     *See* State's Ex. 1.
[11]     Supr. Hr'g Tr. p. 13.
[12]     *See* State's Ex. 1.

Defendant was then asked, and refused, to submit to standardized field sobriety testing. Defendant initially seemed to be compliant with the Troopers request to do the "eye test,"[13] as he engaged in conversation with the Troopers with respect to whether he was wearing contact lenses and why it was relevant to the test. One Trooper explained to Defendant he seemed impaired and that was the reason for the test, at which point Defendant appeared confused about the fact they had been asking him to do a field sobriety test. Defendant then refused all testing, having said, "I ain't [sic] submit to any test." Following this refusal, a search warrant was applied for and obtained to obtain a sample of Defendant's blood for testing.[14]

## II. STANDARD OF REVIEW.

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence."[15] But once the defendant has established a basis for his motion, the burden shifts to the State to show that the warrantless search or seizure was reasonable.[16] In the context of a DUI arrest, the State bears the burden to prove the

---

[13] Despite having mentioned the "eye test" on multiple occasions by Trooper Brooks in testimony and his Affidavit of Probable Cause in support of his blood draw warrant, testimony was elicited eventually that this refers to the NHTSA Horizontal Gaze Nystagmus roadside field sobriety test. Supr. Hr'g Tr. p. 16.

[14] Supr. Hr'g Tr. p. 19.

[15] *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995); *State v. Babb*, 2012 WL 2152080, at *2 (Del. Super. Ct. June 13, 2012).

[16] *Id*; *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) (the State bears the burden of proof on a motion to suppress evidence seized during a warrantless search.)

6

legality and the reasonableness of the underlying stop and subsequent arrest by a preponderance of the evidence.[17]   In determining whether an officer's actions were supported by reasonable, articulable suspicion, the Court examines the totality of the circumstances "as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[18]

## III.   THE ROADSIDE DETENTION FOR FURTHER INVESTIGATION INTO IMPAIRED DRIVING WAS SUPPORTED BY REASONABLE, ARTICULABLE SUSPICION.

All parties agree that the initial traffic stop was proper, as there was a shots fired complaint and the officer was investigating same when he pulled over the Volkswagen.   Defendant's motion begins with a challenge to Trooper Brooks' decision to extend the detention to begin a DUI investigation.   In order to extend a routine traffic stop for a separate investigation, there must be "independent facts, known to the officer at the time, that justify the additional intrusion."[19] "In order to detain someone to administer field sobriety tests, an officer need only possess a reasonable articulable suspicion of criminal activity."[20]   An officer possesses

---

[17]   *State v. Anderson,* 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).
[18]   *State v. Wise*, 2016 WL 7468058, at *4 (Del. Super. Dec. 22, 2016) (quoting *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003)).
[19]   *Caldwell v. State*, 780 A.2d 1037, 1050 (Del. 2001) (citing *Robertson v. State*, 596 A.2d 1345 (Del. 1991)).
[20]   *State v. Kang*, 2001 WL 1729126, at *8 (Del. Super. Nov. 30, 2001).

7

reasonable articulable suspicion "when the totality of the circumstances, which include objective facts and the officer's subjective interpretation of those facts, shows the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity."[21]  "[W]hile a mere hunch does not constitute reasonable suspicion, the level of suspicion required is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for probable cause."[22]

The State argues that prior case law dictates a finding of reasonable, articulable suspicion upon a showing of a traffic violation in addition to an odor of alcohol.  While it is correct that prior decisional law has made such a finding, there is a distinction between the types of traffic violation:  a moving violation and an equipment violation.  The reason a traffic violation may support a finding of either reasonable, articulable suspicion or probable cause for purposes of a DUI investigation is because a moving violation is indicative of impaired judgment, arguably due to the consumption of drugs of alcohol.[23]  Therefore, the simple fact that there is a traffic violation alleged does not necessarily meet such a finding.

---

[21]  *State v. Flonnory*, 2013 WL 3327526, at *3 (Del. Super. June 12, 2013) (internal quotation marks and citations omitted).

[22]  *State v. Jackson*, 2022 WL 18401412, at *2 (Del. Super. Dec. 28, 2022) (internal quotation marks and citations omitted).

[23]  *See State v. Rothenberg*, 2017 WL 2257381, at *3 (Del. Super. May 22, 2017) (odor of alcohol and traffic offense justified proceeding to field sobriety tests); *State v. Wise*, 2016 WL 7468058, at *4 (Del. Super. Dec. 22,

8

The violation alleged against Defendant is an equipment violation, which alone is not indicative of impaired judgment. It is the Defendant's actions in causing this equipment violation that rises this violation to the level of impaired judgment. Defendant wasn't simply driving around in a vehicle with a loud muffler, he was intentionally causing the muffler make loud, illegal noises. Defendant admitted his poor judgment in "popping" the muffler off intentionally and apologized repeatedly for "being dumb" with respect to his actions. Therefore, it is not the equipment violation here that is indicative of impairment, but the lapse in judgment Defendant displayed in purposefully popping his muffler as he drove, which imitated the sound of gunshots, especially at such an hour in the morning.

Defendant argues the odor of alcohol detected by Trooper Brooks should be discounted in light of the wind speeds that night. At the hearing, Defendant introduced into evidence information obtained from a website that purports to state the weather conditions and windspeed for November 13, 2022.[24] Page two (2) of this exhibit states that at 1:51 a.m., the wind speed was 18 mph, with gusts up to 26 mph and there was light rain. Trooper Brooks' BWC shows light rain that morning.

---

2016) ("Before beginning the pre-exit tests, the officer observed that [defendant] had a moderate odor of alcohol and had rear-ended another vehicle at a stop sign. That alone would create a reasonable and articulable suspicion that a DUI had been committed.").

[24] Def. Ex. 4.

9

Defendant argues that because of the wind speed, Trooper Brooks would not have been able to detect an odor of alcohol. While the argument is understood, it does not necessarily undermine Trooper Brooks' testimony. On the BWC, Trooper Brooks can be heard commenting on the odor of alcohol, and Trooper Brooks testified that the odor was slight while on the passenger side of the vehicle, but he detected a stronger odor once Defendant was outside of the vehicle and he was by Defendant's side.[25] Giving full consideration to Defendant's evidence of wind speed, the fact that "hypothetically innocent explanations may exist for facts learned during an investigation does not preclude a finding of probable cause."[26]

The totality of the circumstances here, from the vantage point of a reasonably trained police officer establishes reasonable, articulable suspicion to further detain Defendant for suspicion of DUI. Defendant exhibited slurred and confused speech, was exercising poor judgment in popping off his muffler to make it sound like gunfire, emitted an odor of alcohol and exhibited glassy eyes. These facts establish the reasonable, articulable suspicion required for further investigation.

## IV. THE SEARCH WARRANT FOR DEFENDANT'S BLOOD WAS SUPPORTED BY PROBABLE CAUSE.

Defendant further challenges the Affidavit in support of the Search Warrant obtained to draw his blood for alcohol analysis, as insufficient to establish probable

---

[25] Supr. Hr'g. Tr. p. 32.
[26] *Lefebvre v. State,* 19 A.3d 287, 293 (Del. 2011).

cause. The State responds that the information provided in the supporting Affidavit does, in fact, establish probable cause. Specifically, Defendant's motion challenges that, "Brooks was without probable cause to arrest Defendant, take him into custody, draw his blood, and charge him with DUI."[27] At the beginning of the suppression hearing this argument was clarified, and all parties agreed that the Court's determination of probable cause was limited to the four corners of the warrant, as this was the challenge made by Defendant. Accordingly, Trooper Brooks was only questioned with respect to his decision with respect to reasonable, articulable suspicion to initiate a DUI investigation and with respect to the challenge to the blood collection kit paperwork errors.[28]

A police officer has probable cause to believe that a defendant has violated 21 *Del. C.* § 4177, driving under the influence of alcohol, "when the officer possesses 'information which would warrant a reasonable man in believing that such a crime has been committed.'"[29] "To meet this standard, police must 'present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability' that the defendant has committed a DUI offense."[30] When

---

[27] Def. Mot. to Supr., ¶3 C.
[28] Supr. Hr'g, pp. 4-5.
[29] *Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989) (quoting *Garner v. State*, 314 A.2d 908, 910 (Del. 1973)).
[30] *Lefebvre v. State*, 19 A.3d at 292-93 (quoting *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993)).

11

deciding whether probable cause exists to arrest a driver for a DUI offense, a court will consider the officer's observations, "which frequently include the quality of the driver's performance on field sobriety tests."[31]   Additionally, while no precise formula exists to determine probable cause, refusal to submit to standard field sobriety tests may be considered in the probable cause analysis.[32]   In reviewing an Affidavit of Probable Cause the Court's scope of review is limited to the four corners of the warrant.[33]

In his Affidavit,[34] Trooper Brooks included that as a graduate of the Delaware State Police Academy, he had been trained in DUI detection and in administering the National Highway Traffic Safety Administration standardized field sobriety testing.  Further, he averred:

> 2. On 11/13/2022 at approximately 0137 hours, I was dispatched to the area of Four Seasons Parkway and Old Cooch's Bridge Road located in the County of New Castle, DE. in reference to a shots fired complaint.
>
> 3. Upon arrival to Four Seasons Parkway, I observed a Silver Volkswagen GTI with Delaware registration: 522139 traveling toward South College Avenue from Four Seasons Shopping Center.  I observed the vehicle to have an extremely loud muffler that resembled the sound of gun shots when it would backfire.  I followed the vehicle to the red traffic signal at the intersection of Fourt Seasons Parkway and South College Avenue.  The vehicle was stopped at the red traffic signal and continued to make a disturbance with its loud muffler.

---

[31]   *State v. Lewis*, 2013 WL 2297031, at *3 (quoting *Lefebvre*, 19 A.3d at 293).
[32]   *Rybicki v. State*, 119 A.3d 663, 670 (Del. 2015).
[33]   *Id.* at 668-669.
[34]   *See* Def. Mot. to Supr., Ex. A.

12

Trooper Brooks included that he initiated the traffic stop and then continued to include:

> 5. I made contact with [Defendant] and observed [Defendant] to have glassy eyes and slurred speech. [Defendant] stated he was coming from his friends house but had not been drinking.
> 6. …When [Defendant] exited the vehicle, I observed a strong odor of alcohol emitting from his breath. I asked [Defendant] if he would participate with an eye test and [Defendant] refused.
> 7. I responded to Troop 2 with [Defendant] where I then asked [Defendant] if he would perform in any other field tests or an intoxilyzer and [Defendant] refused all tests.
> 8. At Troop 2, while taking custody of [Defendant] property [sic], I located a receipt from Halftime Sports Bar and Music Venue, 500 Plaza Drive, Newark, DE in the County of New Castle, DE. This Venue [sic] is in the same parking lot when I initially observed the silver Volkswagen. The receipt is dated 11/13/2022 with time of sale 12:32:47 AM for the amount of $98.50. The purchase was made with a VISA credit card…belonging to [Defendant].

In reviewing a magistrate's issuance of a warrant, great deference is given to that determination. The Court's review is not a *de novo* review, but is one that ensures the magistrate had "a substantial basis for concluding that probable cause existed."[35] The court must determine whether probable cause was found after a proper analysis of the totality of the circumstances known to the magistrate.[36]

Here, the issuing magistrate was presented with sufficient facts to warrant a reasonable person to believe that a violation of 21 *Del. C.* § 4177(a) had occurred. Trooper Brooks included the shots fired complaint, the fact that he observed

---

[35]  *State v. Holden*, 60 A.3d 1110, 1113 (Del. 2013).
[36]  *Rybicki*, 111 A.3d at 668 (citing *Holden*, 60 A.3d at 1113).

13

Defendant operating the Volkswagen in a matter to intentionally cause the muffler to backfire causing such a sound, that Defendant's eyes were glassy and an odor of alcohol was detected on two separate occasions, Defendant's refusal of standardized field sobriety tests and the fact that a receipt for $98.50 from an alcohol serving establishment was found on Defendant with a time of only one hour prior to the call for shots fired. Trooper Brooks included the fact that Defendant denied drinking alcohol, and also presented the magistrate with the information that Defendant stated he was coming from his friend's house. In looking at the totality of the circumstances, probable cause existed at the time of the presentation of the warrant to constitutionally permit a sample of Defendant's blood to be drawn.

While not argued in the motion or at the hearing, the Court notes that Defendant was placed in handcuffs immediately upon getting out of the Volkswagen. This is presumably due to the shots fired call, however, this is not a finding the Court can make since it was not explored on the record. Without fully exploring this issue *sua sponte* and without argument from the parties on either side as to any further constitutional challenges,[37] the Court finds that probable cause exists in the Affidavit of Probable Cause even without the inference permitted from Defendant's refusal to submit to field sobriety testing. Again, Defendant exhibited

---

[37] *See Berkemer v. McCarthy*, 468 U.S. 420, 421 (1984) (*Miranda* warnings are not required for roadside investigations); *see also Fuentes v. State*, 2002 WL 32071656, at *2 (Del. Dec. 30, 2002).

poor judgment, a strong odor of alcohol, slurred and confused speech prior to exit and was found to have a receipt from a bar time stamped an hour prior to his stop, despite claims that he had not been drinking and was coming from a friend's house.

Accordingly, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

*Danielle J. Brennan*

Danielle J. Brennan, Judge

Original to Prothonotary